City of Dixon v. Allemand.

---

## City of Dixon v. Mary Allemand et al.

### Gen. No. 4,810.

1. CHANGE OF GRADE—*when city liable for.* A city is liable for a change of grade and an inadvertent invasion of private property, notwithstanding the work done may not appear technically to have been authorized by the proper authorities. The presumption is that work upon the streets of a city performed under the direction and supervision of officials thereof, is done with the authority of the city, and such authority will be presumed in the absence of proof to the contrary.

2. ESTOPPEL—*when does not preclude liability of city for invasion of private property.* Where a city in performing work upon its streets invades private property through a mistake of its engineer with respect to the street line, an owner is not estopped from making claim for damages because he sees the invasion take place and is silent with respect to the location of such line.

3. ABSTRACT—*when reviewing court will look to record.* Where an abstract is defective a reviewing court will not look to the record for reasons for reversal, but may examine the same for the purpose of assigning reasons for affirmance.

Action on the case. Appeal from the Circuit Court of Lee County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907. October 4, 1907, rehearing denied and additional opinion filed.

**Statement by the Court.** Mary Allemand and Sarah Rice, sisters, owned lot 14 in Riverview addition to Dixon.

There was upon it a dwelling house in which one of them lived. In front of the lot was a wooden sidewalk about a foot below the surface of the lot. The roadway in the street was considerably lower, with a sloping bank. In preparation for a concrete sidewalk the place where the sidewalk had been was cut down some six or seven feet at one corner of the lot and some four feet at the other. This work of cutting down was done by the city superintendent of streets. The city engineer gave him the lines and grades and the superintendent of streets worked from them. Either the city engineer or the superintendent of streets made an error, and a portion of the lot was cut away. At one corner the lot was cut away six or seven inches in width and at the other corner two and a half feet in width, so that the center of the new sidewalk at that point was exactly the corner of the lot. This excavation was destructive of so much of the lot as was so removed. The owners had some trees at the front of the lot which they had set out twelve years before and others eight years before. This excavation into the lot uncovered and exposed the roots of these trees and the owners found it necessary to remove and did remove some of them, and others must be removed or they will die. This cutting down of the street and of the front of the lot made ingress and egress to and from the lot much more difficult, and seriously affected the trees, and depreciated the value of the property. The owners sued the city of Dixon to recover damages for these injuries, and upon a jury trial had a verdict for $290. The trial court required that $90 be remitted from the verdict. This was done, a motion by defendant for a new trial was denied, plaintiffs had judgment for $200 and the city appeals.

JOHN S. DORNBLASER, City Attorney, and JAMES W. WATTS, for appellant.

DIXON & DIXON, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court. The city argues that Kelly, the contractor who laid the

new sidewalk, is the one who is responsible to plaintiffs, but the proof is that the cutting down of the grade of the ground where the new sidewalk was to be and the cutting into plaintiff's lot was not done by him but by the superintendent of streets under the direction of and upon the lines fixed by the city engineer. The contract between Kelly and the city, and the ordinance under which that contract was entered into, did not provide for work on this particular street, at least by its true or usual name, and the city therefore argues that as the city council had not authorized this work it is not responsible for the results, and that if the superintendent of streets and the city engineer have committed a trespass upon plaintiff's lot without authority from the city, they alone are responsible. The proof shows that the contractor and the city officers were acting under an ordinance in evidence which they all supposed authorized the work upon this street. It is suggested that there was an error in the ordinance in naming the street. It is clear the city authorities supposed that the language of the ordinance covered this street. There was no proof that the city council had not in some irregular way authorized this improvement, but only that the city had not passed an ordinance establishing either a general street grade or a sidewalk grade upon that street. When work of this kind is done upon a street within the limits of a city, it is a reasonable presumption that it is done by authority of the city. City of Chicago v. Johnson, 53 Ill., 91; City of Chicago v. Brophy, 79 Ill., 277; Village of Jefferson v. Chapman, 127 Ill., 438. The liability of a city for damages thus inflicted by its officers under its authority by a direct physical disturbance of a property right is upheld by a long line of decisions in this State from Rigney v. City of Chicago, 102 Ill., 64, to City of Chicago v. Jackson, 196 Ill., 496, and Village of Grant Park v. Trah, 218 Ill., 516.

The city argues that plaintiffs are estopped from recovering damages for said injuries. The plaintiff who resided upon the property was away from home at work most of the time, but she saw some of the work done by men whom she knew.

were in authority in the city. Louis Allemand, husband of the other plaintiff and who looked after the property for both plaintiffs, worked for Kelly, the contractor, in putting down this concrete walk. That work, however, was done after the sidewalk space and the part of the lot had been cut down by the superintendent of streets. Neither the plaintiffs nor Louis Allemand protested against what was being done. Whether they were silent because they did not know exactly where the true line of the lot was, or because they did not suppose they had a right to interfere with city officers, or from ignorance or indifference, does not appear. Probably in any case where a city has been held liable for such injuries to real property the owner has seen the wrongful act performed. It does not appear that plaintiffs were silent from any fraudulent purpose. The city engineer gave the lines, and his knowledge of the subject was no doubt much greater than theirs. That act by the engineer was the act of the city. The city had the means of ascertaining the location of the lot lines. It was its duty to ascertain them and not to invade the lot. The city engineer and the superintendent of streets do not claim to have relied upon the silence of the owners or to have been misled thereby. The city does not explain how its officers made the mistake. The proof does not show that either of the plaintiffs or Louis Allemand knew the lot was to be cut till it had been done or partly done. We find no grounds for an estoppel. Thor v. Oleson, 125 Ill., 365; Vail v. Northwestern Life Ins. Co., 192 Ill., 567; 7 Am. & Eng. Ency. of Law, 12 to 25.

The amount of the judgment is sanctioned by the proof. The judgment is affirmed.

*Affirmed.*

**Per Curiam.** Appellant has filed a petition for a rehearing and therein contends, among other things, that this court has stated some things appearing only in the record, and that it should not have gone to the record for any information about this case, but should have confined its attention to the matters set out in the abstract, since appellees did

not see fit to file an additional abstract.   If appellant is correct in this position, then it has presented no grounds for reversing the judgment, for the abstract does not show that appellant excepted to the action of the court in denying its motion for a new trial, after *remittitur,* and in entering judgment for the reduced amount.   So far as the abstract shows, appellant was satisfied with the verdict after that reduction.   It was essential that an exception to the denial of its motion for a new trial should be preserved in the bill of exceptions and embodied in the abstract, in order to permit appellant to raise here the matters of which it now complains.   The rule is as appellant states it, with this qualification, that while courts never turn from a defective abstract to the record to find reasons for reversing a judgment, they do sometimes examine the record where it is thought advisable to give other reasons for affirming. Amundson Printing Co. v. Empire Paper Co., 83 Ill. App., 440; Home Guardian of America v. Holt, 108 Ill. App., 578; Mayer v. Schneider, 112 Ill. App., 628.   The petition for a rehearing is therefore denied.