CARL THOR *et al.*

*v.*

OLE OLESON *et al.*

*Filed at Ottawa June 16, 1888.*

1. EVIDENCE—*degree of proof required.* Before a husband will be held to be a mere trustee for his wife in respect to real estate in his name, so as to subject the same to the payment of her debts, the evidence of that fact must be clear and satisfactory.

2. ESTOPPEL—*the general rule.* The doctrine of equitable estoppel, in respect of the claim of ownership of land of which one may hold the legal title, proceeds upon the theory that the party is forbidden to set up his legal title because he has so conducted himself in regard to the property that to do so would be contrary to equity and good conscience.

3. SAME—*estoppel predicated on omission to give notice of one's rights.* And when the foundation of the estoppel insisted upon is silence, and omission to give notice of one's rights, the party relying thereon must not have had the means of ascertaining the true state of the title by reference to the public records.

4. SAME—*estoppel to claim title as against the creditors of another.* The holder of the legal title to real estate, which was of record, was residing with his family upon the premises, a portion, however, being occupied by tenants. The wife of such holder of the legal title was engaged in business on her own account, and owned considerable property in her own right, other than the real estate mentioned. She was allowed by her husband to collect the rents of the premises mentioned as being occupied by tenants, which she applied in her business. She was given credit on the faith of her supposed ownership of the premises. The husband did not give notice to those holding business relations with his wife, and who were giving her credit, that he claimed title to the land. It was *held*, on bill by creditors of the wife to subject the land to the payment of her debts, the husband was not estopped from asserting title in himself. His title of record and his possession, constituted notice of whatever rights he had.

5. However, had any one about to give credit to the wife inquired of the husband in possession as to whom the property belonged, and been assured by him that it belonged to her, that would have estopped him forever after from claiming title to it as against such creditors.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. I. K. BOYESEN, and Mr. JOHN LYLE KING, for the appellants:

The statements, declarations and conduct of both Martine and Ole Oleson show that the property was treated by them as the property of the former, and he executed mortgages on his property at her request, and against his wish, and gave her the money. Oleson was, from his conduct, estopped from setting up title to the property. *Howe* v. *Cole*, 51 N. H. 287; *Lucas* v. *Hart*, 5 Iowa, 415; *Banking Co.* v. *Duncan*, 1 Johns. Ch. 344; *Hungerford* v. *Earle*, 2 Vern. 261; Bigelow on Estoppel, 567.

Where a declaration or admission, by conduct, is so general in its terms, or made under such circumstances as indicate that it was intended to reach and influence third persons or the community at large, the estoppel will be carried sufficiently far to protect every one who may be presumed to have acted upon, or been governed by it. *Hostler* v. *Hays*, 3 Cal. 302; *Mitchell* v. *Reed*, 9 id. 204; *Lewis* v. *Carstairs*, 6 Whart. 307; 5 W. & S. 205; *Railway Co.* v. *Lacey*, 3 Y. & J. 80; *Gaff* v. *Railroad Co.* 31 Pa. St. 489; *Bank* v. *West*, 46 Me. 15; *Quirk* v. *Thomas*, 6 Mich. 76.

Mr. FRANK J. CRAWFORD, and Mr. B. F. RICHOLSON, for the appellees:

In order to an estoppel, it must appear that the party to be estopped is chargeable with fraud, and the doctrine is never applied in doubtful cases. Bigelow on Estoppel, 476; *Keith* v. *Lynch*, 19 Bradw. 577.

Standing by in silence will not debar a man from asserting a title of record, so long as no act is done to mislead the other party. Bigelow on Estoppel, 502; *Knouff* v. *Thompson*, 16 Pa. St. 357; *Kingman* v. *Graham*, 51 Wis. 232; *Packard* v. *Sears*, 6 A. & E. 469; *Kuhl* v. *Jersey City*, 8 C. E. Greene, 84.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is the ordinary creditor's bill, and was brought by Carl Thor and others, against Ole Oleson and others, to subject the property described, to the payment of certain claims allowed against the estate of Martine Oleson, deceased, who was the wife of defendant Ole Oleson. All the assets belonging to the estate had been exhausted by administration in the regular way, and it was sought to compel payment of the residue of the claims against decedent's estate out of the real property claimed by her husband.

It is alleged in the bill, the title to the property in controversy was in defendant Ole Oleson, and had been since it was purchased from the former owner, in 1865. It is sought to maintain the bill on two grounds: First, that Martine Oleson, since deceased, was the equitable owner of the property,—that it was purchased by her with her own money, and that the title was taken in the name of her husband, defendant Ole Oleson, to place the property beyond the reach of her then creditors and all future creditors, and that the legal title was in her husband in trust for her; and second, if it should be held defendant did not hold the property as trustee for his wife, then, it is alleged, his acts in respect to the property were such that he should be held to be equitably estopped to claim the property as against the creditors of his wife. It is thought that neither ground of relief is sufficiently sustained by the evidence to warrant the relief demanded by the bill. Of course, the burden of proving the facts upon which the right to relief is based, rests upon complainants.

There is no satisfactory testimony showing that the money used in paying for the property was the money of the deceased wife. There is some evidence tending to show defendant Ole Oleson paid his own money for it, and took the deed to himself, as any purchaser would do. On this controverted fact in the case, as to whose money was in fact used in paying for

the property, it may be conceded the evidence is, in a measure, unsatisfactory. On a close and careful study it is seen it is hardly sufficient to overcome the denial of defendant, both in his answer and in his testimony at the hearing of the cause, that his wife's money was used in paying for the property. Before it would be held defendant was a mere trustee for his wife, the evidence of that fact should be clear and satisfactory. Defendant states positively he bought the property and paid for it with his own money, and states the source from whence he obtained the funds used. On the whole case considered, this court can not say the finding of the trial court on this branch of the case is so much against the weight of the evidence it ought for that reason to be reversed.

Nor is the other ground of relief insisted upon, any better sustained. There are few, if any, facts proved that would authorize complainants to invoke against defendant the doctrine of an equitable estoppel. That doctrine proceeds on the theory the party is forbidden to set up his legal title, because he has so conducted himself in regard to the property that to do it would be contrary to equity and good conscience. That principle finds no just application to the facts of this case.

It is said defendant, by his conduct and statements, encouraged the belief his wife was the owner of the property, and in that way induced complainants to loan her money on the faith of her wealth, the reputation for which it is said he created and encouraged. The principal thing it is proved he permitted his wife to do in regard to the property is, that he allowed her to receive rents from the tenants, and to use the same as her own. His conduct and hers in this respect is explained by the fact the wife was a trader, and carried on several kinds of business on her own account, and had been so engaged since before her marriage with defendant, in 1862, up to the time of her death, which occurred in 1883. Her former husband left quite considerable real property, which descended to his and her children at his death. It seems she controlled that,

and used the income in her business. She was constantly borrowing money wherever she could obtain it. It appears she was a woman of great energy of character and vigor of will. Defendant's explanation is, that he allowed his wife to collect and retain the rents of the property that he might thereby secure "peace," and under the evidence in this record that would seem to be a reasonable explanation of his conduct in that respect. This he might properly do without any injury to persons dealing with his wife in her individual capacity.

It is said, also, he was silent when he ought to have made known his rights. The rule on this subject is, when the foundation of the estoppel insisted upon is silence, and omission to give notice of one's rights, the party relying upon the same must not have had the means of ascertaining the true state of the title by reference to the public records. Here, the title of defendant was a matter that appeared on the public records, and was open to the inspection of everyone. Besides that, he lived with his family on the premises, from 1865, when he alleges he bought the property, up to 1883, when his wife died, except one year that he lived on premises that had belonged to his wife's first husband. Although the wife was a trader on her own account, yet while she lived with him, her husband, in law, would be regarded as the head of the family. The property was therefore his homestead. Persons dealing with the wife, if they wished to know anything concerning the property occupied by her husband, should have inquired of him in possession, and he would be bound by his answers. Had any one about to give credit to the wife, inquired of her husband in possession to whom the property belonged, and had been assured it belonged to the wife, that would have estopped him forever after from claiming title to the property as against such creditors. But it can hardly be claimed in this case the husband said anything to any one about to give credit to the wife, that could mislead, except in a single instance. One creditor does say he asked defendant to sign the note given by

24—125 ILL.

his wife, and that he replied, "It is no use for me; I have not got anything; everything is hers." This conversation is expressly denied by defendant, and as to the fact in controversy there is no preponderance of the evidence in favor of complainants. Defendant also denies the statements made by Mrs. Swensen on the same subject.

Any further comment on the testimony in detail would be a useless and profitless work. The controversy, as has been seen, is largely one of fact. The trial court had some advantages for ascertaining the facts, not possessed by this court, and no sufficient reason is perceived for reversing the findings of that court upon either branch of the case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*