### M. W. LOWRY v. G. L. CARTER ET AL.

Decided May 22, 1907.

**1.—Deed as Mortgage—Burden of Proof.**

When an instrument in the form of an absolute deed is alleged to be in fact a mortgage the burden of proof is upon the party so alleging.

**2.—Estoppel by Deed.**

When one has conveyed by deed specific property for a valuable consideration and afterwards takes a deed conveying to himself an outstanding title to the property, the law conclusively presumes that the purchase was made for the vendee, and passes the title to him the moment the deed is executed.

**3.—Same.**

    C. and wife executed a deed of trust upon their homestead to secure the purchase money of the same; they then sold the homestead to L. and B., with covenant of general warranty; the deed of trust was foreclosed and the land bought in by the creditor, who shortly thereafter reconveyed it to C. and wife, reserving a lien to secure a part ؟ the purchase money; C. and wife again sold the property to one L. w؟ assumed the debt due the creditor as part of the purchase money. In a suit by L. and B. in trespass to try title for the property against L. held, that L. and B. were entitled to recover.

**4.—Deed—Implied Covenant.**

    By statute in this State the use of the word "grant" or "convey" in a deed implies a covenant that the land is at the time of conveyance free from encumbrance. Rev. Stats., art. 633.

    Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

    *J. D. Martin,* for appellant.—Fannie L. Carter having acquired the superior title to the property in controversy on the 15th day of April, 1905, by a deed from the Standard Savings & Loan Association, was not estopped by her former deed to plaintiffs of the 30th of March, 1903, and her deed to intervener, M. W. Lowry, in which she was joined by her husband on the 4th of November, 1905, vested in intervener, the superior title to the lot. See Act of April 30, 1846; Paschal's Digest, 1003; Act February 3, 1841; Wadkins v. Watson, 86 Texas, 196; Kavanaugh v. Brown, 1 Texas, 481; Trimble v. Miller, 24 Texas, 215; Foster v. Johnson, 89 Texas, 640; Stallings v. Rullum, 89 Texas, 431.

    *Fleming & Fleming* and *G. P. Dougherty,* for appellees.—Where a grantor executes and delivers a deed conveying land with covenants of general warranty of title, who has no title to the land at the time of the execution and delivering of the deed, but afterwards acquires title to the land, the after-acquired title passes by estoppel *eo instanti* to his warrantee, and binds both the warrantor and his heirs and subsequent purchaser from either. Robinson v. Douthit, 64 Texas, 101; Lindsay v. Freeman, 83 Texas, 259; Baldwin v. Root, 90 Texas, 546.

    When a husband and wife convey property occupied by them as a homestead, to which they have an incomplete community title, or no title, by a general warranty deed properly executed, and after the execution and delivery of this warranty deed, the property is conveyed to them as community property and the title is vested in the community estate, the wife is estopped to assert homestead rights in the property in the face of her deed to the property. West End Town Company v. Griggs, 93 Texas, 451; Johnson v. Burton, 87 S. W. Rep., 181; Brown v. Humphrey, 95 S. W. Rep., 23; Pepper v. Smith, 54 Texas, 115; Ranney v. Miller, 51 Texas, 263.

    Where a married woman, joined by her husband, executes and delivers a general warranty deed to a community homestead, and where the deed of conveyance expressly recites that there are no encumbrances upon the property, and the deed expressly warrants the title to the property, and warrants against encumbrances, and a valuable and full

consideration is paid for the property and received by the grantors; and after the conveyance by the husband and wife the property is sold under and to satisfy an encumbrance upon the property existing at the time of the conveyance by the husband and wife, and the wife, as a member of the community partnership, becomes the purchaser, she is guilty of such actual and positive fraud as will estop her from asserting homestead rights in the property in the face of her deed. Moerlein v. Scottish Mortgage Company, 9 Texas Civ. App., 422; Thompson Savings Bank v. Gregory, 59 S. W. Rep., 622.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by W. A. Langham and A. E. Broussard, against G. L. Carter and his wife Fannie L. in the ordinary form of an action of trespass to try title to lot 279, block 46, in the city of Beaumont, Texas. Pending the suit the defendants Carter and wife sold the property to M. W. Lowry, who came into the suit as an intervener. Our conclusions of fact and law will sufficiently indicate the issues made by the pleadings and evidence. The case was tried without a jury and, upon the findings of fact and law by the trial court, judgment was rendered in favor of plaintiffs against defendants and intervener.

*Conclusions of Fact.*—There is evidence to support the findings of the trial court, which are substantially as follows:

On June 2, 1900, R. C. Devant and wife, by their deed of that date, conveyed the property in controversy to defendant G. L. Carter. The consideration was $1,200, $200 of which was cash and the balance, twenty promissory notes for $50 each, one payable each month until all were paid, a vendor's lien being expressly retained to secure their payment. When the deed and notes were made, defendants were husband and wife. Twenty of the notes were assigned on November 24, 1900, by R. C. Devant to the Standard Savings and Loan Association of Dallas, Texas. On December 14, 1900, G. L. Carter and wife executed to F. W. McGuire, trustee, a deed of trust on said lot to secure said Standard Savings & Loan Association in the payment of a note for $700, which was then given in renewal of fourteen of the vendor's lien notes assigned the company by Devant. This note was payable eighty-four months after date, and provided that default of payment of interest for six months, should mature the principal at the option of the holder. The deed of trust contained the usual power of sale, given in such instruments to the trustee, and of appointing a substitute trustee, in event of the death of the original one, or his failure or refusal to execute the trust. On March 30, 1903, the defendants, G. L. Carter and wife, by their deed of that date conveyed the property in controversy to the plaintiffs W. A. Langham and A. E. Broussard. This deed recites a consideration of $2,000 and is in form an absolute deed conveying the property with covenants of general warranty of title. At the time of its execution it was intended by all the parties to the deed that it should be an absolute conveyance of title to the property. The consideration actually paid by the grantees to the grantors for the lot was $3,100, which was its full value at the time. It was not the intention of the parties at the time the instrument was executed that it should operate as a

mortgage, but that it should operate as an absolute and unconditional conveyance of the property. On April 4, 1905, B. E. Moore, as substitute trustee in the deed of trust above described, after duly advertising the property as required by law, sold the same at public sale, at the court house door of Jefferson County, Texas, to the Standard Savings and Loan Association of Detroit, Michigan, for the recited consideration of $150 cash. On April 15, 1905, said Standard and Loan Association executed a deed, of that date, to Mrs. Fannie L. Carter to the lot in controversy, the consideration being $25 cash and the execution by G. L. Carter to the Association of a promissory note for $600, payable in installments of $20 at the end of each month, a vendor's lien being expressly retained to secure its payment. This note was assigned on September 9, 1905, by the payee to I. R. Bordages. On November 14, 1905, the property was conveyed by G. L. Carter and his wife to M. W. Lowry. The deed expresses as the consideration the assumption by the grantee of the payment of the six hundred dollar note made by the grantors to the Standard Savings and Loan Association of Detroit, Michigan, and the payment of one dollar cash. But the full consideration was $1,350, including the assumption of payment of the note. The property in controversy was actually occupied by Carter and wife as their homestead from the time they purchased it from Devant until the date of their deed to Langham and Broussard, and was so occupied by them when said deed was executed and delivered. During the time it was occupied as their homestead they owned no other property. When Carter and wife purchased the property from the Standard Savings and Loan Association of Detroit, Michigan, they had no homestead, but they were occupying the property as the tenants of Langham and Broussard and repurchased it from said Association with the intention of making it their home.

*Conclusions of Law.*—1. The first assignment of error complains that the court erred in finding as a fact "that the deed from G. L. Carter and wife, Fannie L. Carter, of date March 30, 1903, to plaintiffs was intended by all parties to said deed at the time of its execution and delivery as an absolute conveyance, and that it was not the intention of said parties that said deed should operate as a mortgage." The instrument being in the form of an absolute deed of conveyance, the burden was upon the appellant to prove that it was intended by the parties as a mortgage (Goodbar & Co. v. Bloom, 96 S. W. Rep., 657), and unless the evidence offered by him was so cogent as to leave no room for doubt in the mind of anyone that it was intended as a mortgage, the finding of the trial court is conclusive on us of the fact it was intended by the parties as an absolute deed to the property. Hence, we have held with the trial court on this issue. But, aside from the burden being upon the appellant to show the instrument was a mortgage, the evidence, when tested by the rule given by the law for determining such an issue, is amply sufficient to sustain the finding of the trial court.

2. It is claimed by the fourth assignment of error (which is the only other insisted on in appellant's brief) that the trial court erred in the conclusion that the title which passed by the deed of

B. E. Moore, substitute trustee, to the Standard Savings & Loan Association, and thence by its deed to Fannie L. Carter, passed, *eo instanti,* by estoppel to plaintiffs. It will be noted from the facts found that the property at the time Carter and wife made the deed to the plaintiffs was their community property; that upon the execution of the deed it ceased to be their homestead; that the deed from the Loan Association to Mrs. Carter emanated from a deed of trust she and her husband had made to secure the unpaid purchase money due from them on the premises; that such deed did not operate to make the lot Mrs. Carter's separate property, but its effect was to vest title in the community. So, in determining the question, the matter should be viewed as though the name of G. L. Carter alone appeared in the deed as grantee. "If, for a valuable consideration, A makes a deed to B, wherein he assumes to convey a specific parcel of land, he thereby asserts that he is the owner of it, and that a title to the same thereby passes to B. And yet if he has no title, nothing in fact passes by the deed. But if he shall, soon after this, become the owner of the land, and the purchaser insists upon claiming it, it would not be open to him to deny such claim, after having thus taken the grantee's money, and having solemnly declared that he was and should be the owner of the land." 3 Washburn on Real Property (3d ed.), 85. Thus it is seen from high authority that in such a case title would pass to A's grantee by estoppel, though there were lacking the element of the covenant of warranty in his deed. It rests purely upon the ground that it would be iniquitous to permit one, after he has asserted ownership of land and made a deed conveying it to another, upon a valuable consideration, to obtain by deed an outstanding title and hold it against his vendee in spite of the deed he has made to him. If, as it is held, it is fraudulent for a purchaser to take a conveyance in prejudice of the known title of another (Kimball v. Houston Oil Co., 99 S. W. Rep., 855), *a fortiori* is it fraudulent for one to take a conveyance and hold under it in derogation of the very title that his own deed has declared to be in another. Therefore, when one has conveyed by deed specific property to another for a valuable consideration and afterwards takes himself a deed conveying an outstanding title to the property, the law—never presuming fraud, but on the contrary, honesty and fair dealing—conclusively presumes that the purchase was made for the vendee and passes the title to him the moment such deed is made. While it is unnecessary to hold here that this principle is applicable to a married woman who has conveyed her separate property, or joined with her husband in the conveyance of the homestead in the manner prescribed by law, no reason is perceived why it is not.

The principle that, if one without title makes a deed to land with covenants of warranty, and afterwards acquires title to the same it will inure to the grantee and covenantee by way of estoppel (usually denominated "estoppel by warranty"), is but an illustration of the general principle of estoppel by deed. Among the covenants implied in this State from the use of the word "grant" or "convey" in any conveyance by which an estate of inheritance or fee simple is passed, is "that such estate is at the time of the execution of such

conveyance free from encumbrance." Sec. 633, Rev. Stats. of 1895. If, then, a grantor in such a deed should be permitted to hold against his grantee under a subsequent deed which emanated from such an encumbrance as he has covenanted against, as is sought to be done in this case, the statute raising such covenant of warranty would, in effect, be abrogated. We can perceive no foundation in principle or right why the doctrine of estoppel by deed does not apply with full force in this case. We therefore, overrule the assignment and affirm the judgment. ,

*Affirmed.*

Writ of error refused.