### J. F. FRAZER ET AL. v. C. S. L. SEUREAU.

Decided April 20, 1910.

**1.—Trespass to Try Title—Prior Possession.**

Prior possession of a plaintiff in trespass to try title or of his vendor is sufficient without more to entitle him to recover as against a naked trespasser.

**2.—Same—Absolute Deed as Mortgage.**

One who claims that an absolute deed is in fact a mortgage, has the burden of proving such fact by clear and satisfactory evidence, and this rule applies when a deed is offered as evidence of title in trespass to try title.

**3.—Same.**

Even though a deed absolute on its face was intended as a mortgage as between the grantor and grantee, the grantee may exercise all the rights of an absolute owner against every one except the grantor, and hence would be entitled to recover from a mere trespasser the land therein conveyed.

**4.—Title by Limitation—Enclosure.**

One who himself or by a tenant actually resides upon a large tract of land and claims it for ten years, acquires title to 160 acres thereof, including his improvements, whether it is enclosed or not, unless there is something in the evidence to restrict him to a smaller area. When the possession

is under a deed, it extends to the boundaries given in the deed without regard . to the enclosures. Hence where one claimed title by limitation to a tract of 34 acres described in a deed it was not necessary for him to show that the tract was entirely enclosed.

**5.—Limitation—Possession—Evidence—Natural Boundary.**

When an enclosure consists partly of fences and partly of a river or other natural barrier, it is a question for the jury whether or not it was enclosed in such manner as to notify the public that the land was appropriated and adversely claimed.

**6.—Limitation—Five Years Statute—Payment of Taxes.**

The payment of taxes upon the very land in controversy is necessary to support the five. years statute of limitation. Payment upon a tract or grant which does not include the land in controversy is not sufficient.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*George H. Breaker,* for appellants.—The plaintiff failed to show that she had any legal or equitable title to the property in controversy on which she could recover at the time when the suit was filed, and .plaintiff failed to set up in her petition by amendment a title acquired after the filing of the suit; the judgment should therefore have been for the defendants. Bradford v. Hamilton, 7 Texas, 55; Simpson v. McLemore, 8 Texas, 448; Teal v. Terrell, 48 Texas, 491; Ballard v. Perry, 28 Texas, 352; Ballard v. Carmichael, 83 Texas, 355.

To entitle one to recover against a naked trespasser for ouster it must be shown that the plaintiff had such a visible and exclusive possession as, if continued for the length of time required by the statute of limitation, would have entitled him to hold by limitation, and plaintiff having failed to show that G. N. Phelps and his wife had such possession at the time of the alleged ouster could not recover. Vineyard v. Brundett, 17 Texas Civ. App., 147; Polk v. Beaumont Pasture Co., 26 Texas Civ. App., 242; Niday v. Cochran, 42 Texas Civ. App., 295; 1 Cyc., 989, 990, note 55.

Plaintiff failed to prove that G. N. and C. D. Phelps were claiming title to the land in controversy at the time when the fence was moved, as claimed by plaintiff, and judgment should therefore have been rendered for defendants. House v. Reavis, 89 Texas, 633.

*Andrews, Ball & Streetman,* for appellee.—Plaintiff had prima facie a good title at the time of the institution of her suit, and she had the right to protect herself by buying in an outstanding title, even after issue joined. Martin v. Parker, 26 Texas, 261; Ballard v. Perry, 28 Texas, 363; Keyes v. Houston & G. N. R. Co., 50 Texas, 174; Sinsheimer v. Kahn, 6 Texas Civ. App., 143; O'Connor v. Vineyard, 43 S. W., 55.

The grantee of the legal title, in cases of the execution of an absolute deed, whether the transaction be a mortgage or a conditional sale, may exercise all the rights of an absolute owner as to third parties. 1 Jones on Mortgages, sec. 339; Devlin on Deeds, sec. 1141.

Plaintiff having shown a prior possession of the premises in controversy by G. N. Phelps, and having produced in evidence a conveyance of said premises by said Phelps to Auguste Seureau, and having shown that the said Auguste Seureau was dead, and that she was his surviving wife, and that said premises were acquired during the existence of the marriage relation between herself and said Auguste Seureau, showed a title upon which she was entitled to recover in this suit. Keys v. Mason, 44 Texas, 142; Caplen v. Drew, 54 Texas, 496; House v. Reavis, 89 Texas, 630; Watkins v. Smith, 91 Texas, 592; Cook v. Spencer, 91 S. W., 814; Parker v. Ft. Worth & D. C. Ry. Co., 71 Texas, 133; Duren v. Strong, 53 Texas, 382; Cobb v. Robertson, 99 Texas, 138; Texarkana & Ft. Smith Ry. Co. v. Texas & N. O. Ry. Co., 28 Texas Civ. App., 551; Teagarden v. Patten, 48 Texas Civ. App., 571.

NEILL, ASSOCIATE JUSTICE.—The appellee, Clemence Suzanne Laure Seureau, a feme sole, brought this suit on November 30, 1907, in the ordinary form of an action of trespass to try title, against the appellants, J. F. Frazer and George H. Hermann, to recover 3731½ acres, described by metes and bounds, of the William Hardin league, situated in Harris County, Texas. On September 16, 1908, the plaintiff filed her first amended original petition, in which, in addition to the statutory form of an action of this character, she alleged that she and those under whom she claims and whose title she has have had and held peaceable and adverse possession of the premises described, cultivating, using and enjoying the same, claiming the same under title and color of title for more than three years after defendants' cause of action or their claims, if any they have, accrued, and before the commencement of this suit, and therefore she pleaded the three years statute of limitations. She also, under appropriate allegations, claimed title under the five and ten years statutes of limitation.

The defendants, on December 7, 1908, filed their second amended original answer, which consisted of a general demurrer, pleas of not guilty, the three, five and ten years statutes of limitation. They further pleaded that if plaintiff owns any land in the Hardin league it is all situated within the 500-acre tract conveyed by Daniel T. Coit and wife, Eliza Coit, to Walter C. Converse in the deed dated August 2, 1841, recorded in "G," page 464, Harris County deed records, and that defendant Hermann owns the land immediately south thereof, and that the south line of said 500-acre tract is found and located on the ground as follows: Beginning at a point in the center of Buffalo Bayou where the east line of the said Hardin league crosses the same; thence south along the east line of the Hardin league, same being indicated by a fence, 5263 feet to a point; thence west 3780 feet to a point; thence north at 5291 feet pass a stake on bank of Buffalo Bayou, at 5318 feet in all to a point in the center of Buffalo Bayou, following the meanders of same to the place of beginning.

The defendants then prayed for an order locating and fixing the

boundary line and especially the south boundary line of said 500-acre tract as above described.

The case was tried without a jury and judgment was rendered in favor of plaintiff for the land sued for.

The trial judge found the following facts:

"1. That the tract of land in controversy is a rectangular strip, containing 34.3 acres off the south end of a certain 373½-acre tract—a part of what is known as the Phelps 500-acre tract—on the south side of Buffalo Bayou in the William Hardin league in Harris County, Texas.

"2. That the south line of said 34.3-acre tract is the south line of 373½-acre tract, and the south line of said Phelps 500-acre tract, and has been known and recognized as the south line of said Phelps 500-acre tract for over twenty-five years.

"3. That in the year 1894, G. N. Phelps put a tenant on said 373½-acre tract, and caused said tract to be fenced, and that said tenant was in possession thereof, using the same when, in the year 1898, the defendant Hermann, without the knowledge or consent of either Phelps or his tenant, constructed a fence across the 373½-acre tract on the north line of said 34.3-acre tract and took possession of the latter tract and· changed the south line of the Phelps tract to the point where defendants claim.

"4. That thereafter, on July 26, 1904, the said G. N. Phelps, by valid conveyance, conveyed the 373½-acre tract to August Seureau, at which time the latter and the plaintiff were, and for some time past had been, husband and wife.

"That subsequent to said last mentioned date and prior to the institution of this suit, the said August Seureau died, leaving his wife, the plaintiff herein, surviving.

"6. That after defendant Hermann had removed the fence from the south line of the Phelps tract, as claimed by plaintiff, in 1898, he conveyed the premises by a deed to the defendant Frazer, in said deed calling for the south line of the Phelps tract, and shortly after the said date, probably six months, the defendant Frazer placed 'the said piece of land in cultivation, the said cultivation commencing about the 1st day of January, 1895. The court finds that ten years limitation has not run from the said 1st day of January, 1895, up to the filing of this suit. The court concludes that there is not title in the defendant from the sovereignty of the soil."

We adopt the foregoing conclusions of fact, with the explanation that it is evident that the year "1895" appearing in the sixth conclusion is a cleric error, for the preceding part of the finding shows that Hermann did not convey to Frazer until in 1898, and that it was "shortly after said date, probably six months, the defendant Frazer placed said piece of land in cultivation," which must have been the first day of January, 1899, instead of the "1st day of January, 1895." Besides, the evidence shows that Frazer did not get possession of the disputed strip until some time in the latter part of 1898 or the first part of the year 1899.

The conclusions of law reached by the trial court on the facts found were "that the plaintiff having shown prior possession of the

land in controversy to that under which the defendants claim, and a claim by Phelps and use and enjoyment by him through a tenant, and a regular chain of title connecting herself with such possession, and the defendants having shown no title in themselves or either of them, is entitled to recover, and that judgment should be in her favor for the land sued for."

We believe that the evidence is reasonably sufficient to support the conclusions of fact of the trial judge, and that his conclusions of law upon such facts are correct, as we shall demonstrate in considering the defendants' assignments of error.

The third assignment, which is the first insisted on, is as follows:

"The plaintiff failed to show that she had any legal or equitable title to the property in controversy on which she could recover at the time when the suit was filed, and plaintiff failed to set up in her petition by amendment a title acquired after the filing of the suit; the judgment should therefore have been for the defendants."

The contention of defendants under the assignment is that, inasmuch as plaintiff showed no title in herself or in those through whom she deraigned title, but relying simply on the prior possession of Phelps, and a deed, which was in fact a mortgage, from Phelps and wife to her husband, and a quitclaim deed made after the suit was instituted, she could not recover.

It is elementary that prior possession of the plaintiff or of his vendor, is sufficient without more to entitle him to recover against a naked trespasser. Parker v. Ft. Worth & D. C. R. R. Co., 71 Texas, 133; Magerstadt v. Lambert, 39 Texas Civ. App., 472 (87 S. W., 1069); Teagarden v. Patten, 48 Texas Civ. App., 571 (107 S. W., 912); Beauchamp. v. Williams, 115 S. W., 132; Saxton v. Corbett, 122 S. W., 77. The undisputed evidence does not show, as is claimed by defendants, that the deed from Phelps, whose possession was prior to theirs, to plaintiff's husband was in fact a mortgage. It is well settled that one who claims that a deed absolute on its face is a mortgage, has the burden of establishing such fact by clear and satisfactory evidence. Goodbar v. Blum, 43 Texas Civ. App., 434 (96 S. W., 657); Lowry v. Carter, 46 Texas Civ. App., 488 (102 S. W., 930); Rotan v. Turner, 46 Texas Civ. App., 534 (102 S. W., 932); Stringfellow v. Braselton, 54 Texas Civ. App., 1 (117 S. W., 204). Even if the deed were a mortgage, it vested the legal title in Seureau, which entitled him to exercise all the rights of an absolute owner against everyone except the mortgagor. Jones on Mort., sec. 339; Devlin on Deeds, sec. 1141. It having been executed by one whose possession was prior to defendants, who were mere trespassers, so far as they were concerned it could make no difference whether it was a deed or a mortgage, for as against them the grantee could use it with the same force that he could an absolute deed from his grantor. We therefore overrule the assignment.

Under the fourth and fifth assignments are asserted these propositions:

"1. To entitle one to recover against a naked trespasser for ouster it must be shown that the plaintiff had such a visible and exclusive possession as, if continued for the length of time required by the

statute of limitation, would have entitled him to hold by limitation, and plaintiff having failed to show that G. N. Phelps and his wife had such possession at the time of the alleged ouster, could not recover."

"2. If the evidence was sufficient, which is denied by appellants, to show that the plaintiff at the time of the alleged ouster had a fence along the south, east and west lines of the land in controversy, still the uncontradicted evidence shows that there was no fence along the north line of the tract in controversy and there was no evidence to show that the bayou along the north line of the land in controversy was a natural barrier of such a nature as to obstruct access to the land from the north, viz.: that the bayou was not fordable, and therefore the evidence failed to show visible possession of the land in controversy by Phelps at the time of the alleged ouster."

Where one, or his tenant, actually resides upon a large tract of land and claims it for ten years, he acquires title to 160 acres, including his improvements, whether it is enclosed or not, unless there be something in the evidence to restrict him to a smaller area. Craig v. Cartwright, 65 Texas, 421; Pearson v. Boyd, 62 Texas, 541; Williams v. Rand, 9 Texas Civ. App., 636; Simpson Bank v. Smith, 52 Texas Civ. App., 349 (114 S. W., 446); Harris v. Inglehart, 52 Texas Civ. App., 6 (113 S. W., 170). In a case like this, where there is possession under a deed, it is limited to the land described therein, but it extends to the limit of its boundaries. So it was not essential that the land claimed by Phelps, under whose prior possession the plaintiff claims as against the defendants, should be enclosed in order that Phelps' possession by his tenant, if continued for the requisite length of time, would confer title by limitation.

But the evidence shows that three sides of it were enclosed, and the fourth side abutted on Buffalo Bayou and that the entire tract was used by Phelps as a pasture for his cattle. This might itself be sufficient, if enclosure were essential, to show that the land was enclosed. As is said in Dunn v. Taylor, 107 S. W., 956, "Where an enclosure consists partly of fences and partly of natural obstructions, such as rivers, mountains or cliffs, it is the province of the jury to pass upon the question, whether, taking into consideration the quantity, location, and character of the land, the artificial barriers with the natural ones were sufficient to notify the public that the land was appropriated, and to make such appropriation a notorious indication of ownership." See the opinion of the Supreme Court in that case (102 Texas, 80), where such holding is expressly approved.

Besides, the evidence here shows that part of the fence on the south line of the Phelps tract, which brought the strip of land in controversy within the enclosure, was removed by the defendant Hermann when he took possession. The fence being there at the time was notice to him that the land bounded on three sides by fences and on the other by the bayou, was adversely claimed by someone else, and charged him with knowledge of the fact that Phelps' possession through his tenant extended to all the land within such boundaries,

422 TEXAS CIVIL APPEALS REPORTS, VOL. 60. [April,

whether the bayou was such a barrier as would be considered a fence or not. His entry upon the land without right, and removing the fence of the one in possession and claiming the land, constituted him a trespasser upon the possession of Phelps, under whom plaintiff claims, which was such that had it continued for the requisite period would have ripened into title under the ten year statute of limitation. The disturbance of this possession by Hermann's trespass, as we have seen, under the law, entitled Phelps or his vendee to recover possession of the land, unless it were shown that Hermann's entry was under title superior to Phelps' possessory right, such as would relieve him from the imputation of being a trespasser.

It is claimed by defendants under the sixth assignment, that to entitle one to recover in trespass to try title against another who, as a naked trespasser, has ousted him of such possession, it must be shown that at the time of the ouster he was claiming title to the land. We are ignorant of any such principle of law. Possession itself is presumptive evidence of title, and is itself title as against a naked trespasser and may, accompanied with other conditions, ripen into complete title against the real owner and everybody else. It is the strongest kind of right, and one the State is bound to recognize and protect a citizen in the enjoyment of as against the wrongful acts of any and everyone. In the case of House v. Reaves, 89 Texas, 631, the court did not deem it necessary to determine whether or not one who takes forcible possession of real estate by ousting the actual possessor can defeat the right of the person ousted to recover the possession of the property, by showing title in some other person; but, at the same time, the court observed that "there are strong reasons and good authority to sustain the position that he could not." To the writer of this opinion the question has never been regarded an open one, unless it be shown that he who has ousted the person from his possession has since the ouster acquired or connected himself with such outstanding title.

The seventh assignment, which asserts that defendants proved a good record title in themselves to the land in controversy, and that plaintiff, having failed to prove title or possession superior thereto, was not entitled to recover—can not be sustained. For if the strip of land in controversy was, as found by the trial court on sufficient evidence, a part of the Phelps tract, then defendants showed no title at all and must stand exposed as naked trespassers. For the same reason, the defendants showed no title under the five years statute of limitations, the taxes paid being on a different tract of land from that of which the strip of land in controversy is a part.

Our conclusions of fact dispose of the remaining assignments of error adversely to the appellants.

There is no error assigned requiring a reversal of the judgment and it is affirmed.

*Affirmed.*

Application for writ of error dismissed.