FORD v. WARNER. (No. 689.)

(Court of Civil Appeals of Texas. Amarillo. March 20, 1915.)

1. PRINCIPAL AND AGENT ☞126 — CONVEYANCE BY AGENT—TITLE CONVEYED.

A conveyance by an attorney in fact for his principal conveys whatever right the attorney had in the property, whether he signed the conveyance as agent or as principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 430–450; Dec. Dig. ☞ 126.]

2. APPEAL AND ERROR ☞934 — QUESTIONS REVIEWABLE — PRESUMPTIONS IN SUPPORT OF JUDGMENT.

The court must presume that the trial court made findings which will support the judgment, where the facts warrant the findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. ☞934.]

3. PRINCIPAL AND AGENT ☞126—EXECUTION OF INSTRUMENT BY AGENT—FRAUD—EFFECT.

An attorney in fact induced by fraud to execute a deed for his principal to the fraudulent grantee is not bound thereby, and may subsequently acquire title as against the fraudulent grantee or those claiming under him.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 430–450; Dec. Dig. ☞ 126.]

4. ESTOPPEL ☞107—PLEADING—NECESSITY.

A plaintiff suing to remove a cloud on his title and to prevent defendant from asserting title under a deed, on the ground that defendant, in obtaining the deed, was the agent of plaintiff, is confined to the ground relied on, and cannot rely on an estoppel not pleaded.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 297; Dec. Dig. ☞107.]

5. ESTOPPEL ☞107—PLEADING—FACTS.

A plaintiff in a suit to remove a cloud from his title, who relies on estoppel to give him a title, must plead the facts necessary to create an estoppel and authorize a recovery.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 297; Dec. Dig. ☞107.]

6. ESTOPPEL ☞12—ESTOPPEL BY DEED.

To estop one by deed it must be alleged and proved that there was a consideration paid the grantor therein for the land, and this must be done independent of the recitals of consideration in the deed, or it must be alleged and proved that the party sought to be estopped was guilty of fraud or gross negligence in signing the deed, and that the person relying on the estoppel was without knowledge thereof.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. ☞12.]

7. ESTOPPEL ☞12—ESTOPPEL BY DEED—NOTICE.

A party relying on estoppel by deed is chargeable with knowledge of the state of the title shown by the record.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. ☞12.]

8. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—PROPOSITION.

A proposition not germane to the assignment of error will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

9. APPEAL AND ERROR ☞1011 — FINDINGS — CONCLUSIVENESS.

A finding on conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. ☞ 1011.]

10. APPEAL AND ERROR ☞747 — QUESTIONS REVIEWABLE—CROSS-ASSIGNMENT.

In the absence of a cross-assignment complaining of terms in a judgment for appellee, the court cannot reform the judgment so as to eliminate such terms.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3053–3056; Dec. Dig. ☞ 747.]

Appeal from District Court, Hardeman County; J. A. Nabers, Judge.

Action by H. E. Ford against George P. Warner. From a judgment for defendant, plaintiff appeals. Affirmed.

D. H. Doom, of Austin, and W. T. Perkins, of Quanah, for appellant. J. C. Marshall and M. M. Hankins, both of Quanah (John W. Veale, of Amarillo, of counsel), for appellee.

HUFF, C. J. This is an action brought by H. E. Ford against Geo. P. Warner to remove cloud from title and to prevent Warner from using a quitclaim deed alleged to have been fraudulently obtained by him for the purpose of claiming the title to the tract of land therein described, which deed was in Warner's name, and which it is alleged that he obtained for the purpose of casting a cloud on plaintiff's title, and for a decree

quieting the title in the appellant, Ford. The appellant alleged his title specially to the land given in the instruments, giving each instrument in his chain of title down to himself, and that he in good faith purchased the title from one Gardner Ruggles. He alleges that he believed he was getting a good record title at the time of his purchase, but after his said purchase, on an investigation of the record, it was found that the record title to said land was apparently vested in one H. M. Munsell; and he further alleged that Munsell, at the time of said purchase by Ford, had long since parted with his interest in said land by his deed of conveyance to some grantor in the chain of title under which appellant claims, but which deed has not been recorded. He alleges that, after being informed that the record title was in Munsell, he entered into an agreement with Warner to obtain a conveyance from Munsell to appellant, and that, in pursuance of said agreement, Warner, the appellee, obtained a quitclaim deed from Munsell to himself, and refused to convey the land to appellant or deliver him the deed so obtained, and has threatened to place said deed upon record, and thereby cast a cloud upon appellant's title to said tract of land, and claims the same adversely to appellant, although the title in said Geo. P. Warner by reason of said deed from said Munsell was acquired long after said Geo. P. Warner had conveyed his interest in the land by general warranty deed, and therefore the title was, in law, an after-acquired title, and inures to the benefit of all those claiming under the said Geo. P. Warner. The defendant answered, in part stating that he did not knowingly execute a deed to Gardner Ruggles, which is set out and described in plaintiff's petition, but that, if such deed was ever procured of and from appellee to Ruggles, it was procured by fraud and without the knowledge of appellee, and without consideration; that he never at any time knowingly signed such a deed, and that he never at any time intended to convey the land, and that he did not then have title to said section sued for, but that the title to the land was then in H. M. Munsell, and that, if any such deed is in existence, it was procured by fraud, and never acknowledged by him, and was without consideration. It is further alleged by appellee that, if Ruggles deeded to appellant the land, it was never intended to convey the title to said land, that appellant borrowed from Ruggles on the day the deed bears date $320, and that Ruggles, without any legal right to do so, gave the mortgage to appellant on said section 3 to secure the payment of said sum of money, and that the deed pleaded by plaintiff from Ruggles was, in truth and in fact, but a mortgage, and was intended as such at the time it was executed on said land to secure the above debt, and he alleges, if his careless acts caused appellant to be misled in the matter, he is only dam-

aged in the matter of making the loan on a piece of land upon which the borrower had then no title, etc. He denies also that appellant purchased the land from Ruggles in good faith, and says the instruments, if any there were, passed from Ruggles to appellant, were, in truth and in fact, nothing more than a mortgage on property to secure the debt owing appellant by said Ruggles, and that Ruggles did not have any title or right to said land at all. He denies that he ever entered into any contract or promised appellant to procure a deed from Munsell; that appellee for several years had an optional contract with Munsell to purchase the land; and that he had entered into a written agreement with M. M. Hankins, of Hardeman county, Tex., to sell the land to him, and promised to make him title to same as soon as appellee could obtain deed from Munsell, and in pursuance thereto again tried to procure the deed from Munsell, and later on did procure a deed of conveyance of said land from Munsell, and he holds the same, as above stated.

It was agreed in this case in the trial court that Hogle and Mahn were the original owners of the land in question, and were the common source of title as to all the parties; that anterior to all conveyances these parties executed their powers of attorney to appellee; that on February 15, 1900, Hascal A. Hogle executed to appellee, Warner, his power of attorney, coupled with an interest and irrevocable, to sell all the lands, etc. On the 17th day of May, 1901, H. B. Mahn executed and delivered to Geo. P. Warner a power of attorney to sell and convey, among other lands, the land in question, which power was filed for record June 19, 1901. The appellant also offered in evidence a deed from Hascal A. Hogle, by and through his agent and attorney in fact, Geo. P. Warner, to H. M. Munsell, dated the 20th day of September, 1901, and filed for record December 5, 1901, conveying the property in controversy in this suit. He offered in evidence a deed of conveyance from H. B. Mahn to H. M. Munsell, conveying, among other lands, the land in controversy, bearing date the 25th day of September, 1901, filed for record December 5, 1901. Appellant also offered in evidence a deed of conveyance from Hascal A. Hogle and H. B. Mahn, acting by and through Geo. P. Warner, their agent and attorney in fact, to Gardner Ruggles, dated the 21st day of September, 1908, filed for record November 17, 1909, which is a general warranty deed, and purports to convey the whole title. Appellant offered in evidence a deed of conveyance from Gardner Ruggles to appellant, H. E. Ford, dated the 29th day of April, 1909, filed for record November 17, 1909, conveying the land in controversy, and being in form a general warranty deed, and purporting to convey the whole title to the property in controversy. There was on the date of this deed an agreement entered into between appel--

lant and Ruggles, the substance of which, in the disposition of this case, we have concluded is not necessary to set out in our findings.

The land conveyed by these several instruments is described as survey No. 3, block A, located by virtue of certificate No. 30/442, issued to the Texas & New Orleans Railroad Company, and patented to B. H. Epperson, assignee, by patent No. 88, vol. No. 24, situated in Foard county, Tex. The facts are undisputed and alleged by both parties that Munsell, some time in 1910, reconveyed the land in question to Geo. P. Warner, and it is shown by a letter dated Austin, Tex., December 5, 1908, addressed to M. M. Hankins, Quanah, Tex., that Geo. P. Warner had accepted an offer made by Hankins to purchase the land in question.

The facts in this case show that Warner and Ford lived in the city of Austin, and were acquainted with each other and had lived there a good many years at the time of this transaction, and each engaged in the land business, and in an indefinite way shows that there was a large body of land that possibly belonged to the Consolidated Copper Company. Just the connection that Hogle and Mahn bore to this company is not developed by the record, and that Warner in some proceeding or other was receiver of that company, and that these lands were possibly placed in his hands by powers of attorney of Hogle and Mahn, and that Ruggles was an attorney in the city of Austin, and assisted Warner in making a great many of these sales. It was the custom for Ruggles to draft the deeds, and Warner to sign them as attorney in fact. From Warner's testimony we gather that there was an agreement between the various parties some time previous to the conveyance of the lands to Munsell that appellee should have section 3, the land in controversy, as his individual property, to compensate him for his services, and that Ruggles should have another section out of a different block not clearly identified in this record; that in 1901 Warner, Hogle, and Mahn conveyed section 3, as shown by the deeds, to Munsell, which conveyances were recorded in December, 1901, in the proper county. In 1908 it appears from Warner's evidence the Ruggles requested a deed from Warner for the section which Ruggles was to have for his services, and that he drew up the deed and sent for Warner to sign it, representing to him that it was the deed to his (Ruggles') section of land, and that he (Warner), relying upon the confidential and trust relationship theretofore existing between him and Ruggles, accepted his statement as to the contents of the deed without reading it, as he had previously done perhaps, and signed the deed, and that he, in fact, did not at that time acknowledge the deed. This deed, as it has since developed, conveyed section 3, the land which Warner was to have, and which had

theretofore been conveyed to Munsell, which section was written into the deed. At the time Warner signed the deed to Ruggles he did not, in fact, know that it purported to convey section 3, and he did not know until the date of the trial in the court below that the deed he then signed actually conveyed section 3. Having heard that he conveyed the land, he really believed that his name had been forged to the deed, but he admitted upon the trial that the deed signed to section 3 was, in fact, his signature, and that he had made it, but that it was obtained in the manner above stated. There was no money actually paid him or any one, as far as this record goes, for section 3, by Ruggles, at that time or any time previous thereto.

The appellant, when he claims to have purchased the land from Ruggles, did not examine the land or the title to the land, or have an abstract made of the title, but accepted what is designated in the record as a written opinion by Ruggles, in which Ruggles stated the title appeared to be good in Hogle and Mahn, and that he found no instrument in writing in any wise affecting the title or right of possession from either Hogle or Mahn, or any person under authority of either of them, of record in either said Foard or Hardeman county. This was the only instrument that he took at the time with reference to the title—simply Ruggles' representation as to the title as it appeared of record. Appellant testified at the time he purchased the land he paid $320 for it, that Ruggles first tried to borrow money from him, and that he refused to lend him the money, representing that the land was worth $2 or $3 an acre, but that, owing to his necessity and then condition, he would sell the land for 50 cents an acre, and that he bought it at that price. Ruggles was then in financial distress and sick, and he (Ford) had no actual knowledge of any fraud on the part of Ruggles in obtaining the deed in the manner above stated. He states that he left the deed which Ruggles executed to him (appellant) in the hands of Ruggles, who agreed to record the same, and that he afterwards wrote the clerk of Foard county to ascertain if the deed had been recorded, and, upon ascertaining that it had not, he made some effort to get the deed and have it recorded. He was not certain whether he obtained the deed for record himself or whether Ruggles sent it. It was not recorded until November 17, 1909. There is conflict in the evidence between Warner and Ford with reference to calling upon Warner to secure a deed from Munsell to Ford; Ford contending that he so employed Warner, and Warner denying it. According to Warner's version of the matter, Ford, by his attorney and in person, spoke to him about Munsell, and he states that it was in the summer of 1909, and that he was very much surprised at their mentioning the matter,

and he asked them (Ford and his attorney) if they were wanting the deed for Hankins of Quanah, or why they wanted it, and that they did not answer his question, and that he had no idea at that time that they were claiming the property, and knew nothing of these deeds under which they were purporting to claim. He makes this conversation, and, in fact, Ford and his attorneys, show that this conversation occurred before either the deeds from Warner to Ruggles and Ruggles to Ford had been recorded.

The case was tried before the court without a jury, and there are no conclusions of fact by the trial court in this record, so we do not know on just what grounds the court based his judgment. The judgment in this case establishes the title of the land in Warner, free from the charges or deeds of Ford, and decreeing possession of the land to Warner, and, in addition thereto, decrees a lien against the land for $320, with interest thereon at the rate of 8 per cent. from the date of Ruggles' deed to Ford. From this judgment, Ford appeals.

The appellant by his first and second assignments asserts that the deed dated September 21, 1908, from Hogle and Mahn, by their attorney in fact, Geo. P. Warner, appellee, to Ruggles, and from Ruggles to Ford, dated April 29, 1909, both being general warranty deeds, estopped appellee or those claiming under him from asserting an after-acquired title, and that the execution of the deed by Warner, as attorney in fact, also conveyed any interest which Warner individually may have acquired in the property at the date of the deeds.

The appellee replies by a counter proposition that Hogle and Mahn had on September 20 and 25, 1901, by deeds in which Warner joined, conveyed the land to H. M. Munsell, and that at the time Ruggles got the deed September 21, 1908, and the deed from Ruggles to Ford, April 29, 1909, the title to the land was vested in Munsell, and therefore no title to the land passed to Ford, and that, if the deed was obtained from Warner, it was nevertheless secured by Ruggles without paying any consideration therefor, and was also obtained through fraud and deceit, and was for that reason ineffectual to pass the title.

[1] We think it manifest from the record, when the deed was made by Geo. P. Warner, as attorney in fact for Hogle & Mahn, to Gardner Ruggles, September 21, 1908, and from Gardner Ruggles to appellant, Ford, April 29, 1909, that the title to section 3 was in H. M. Munsell, and that these deeds were then properly recorded in the proper county. The title would be thus vested whether the legal and equitable title was in Hogle and Mahn or the equitable title was in Warner. The deed from Hogle and Mahn, by Warner as attorney in fact, to Munsell, had the effect to vest the legal and equitable title to the land in him. The proposition in appel-

lant's assignments may be conceded to be sound; that is, if the deed from Hogle and Mahn, by Warner, as attorney in fact, to Ruggles, was, in fact, their deed, or the deed of Warner, then that the after-acquired title from Munsell to Warner passed, under the terms of Warner's deed to Ruggles and by Ruggles' deed to Ford, by estoppel, that is, estoppel by deed. Robinson v. Douthit, 64 Tex. 101; Lowry v. Carter, 46 Tex. Civ. App. 488, 102 S. W. 930. We also think the proposition sound; that is, the conveyances executed by appellee as the agent for his named principals would have the effect to convey whatever right Warner had to convey, whether he signed it as agent or as principal. Hough v. Hill, 47 Tex. 148; Bennett v. Virginia, etc., 1 Tex. Civ. App. 321, 21 S. W. 126–128, and authorities cited; Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74. This brings us to a consideration of the appellee's counter proposition that the deed and its covenants were not, in fact, the deed or covenants of Warner or of his principals, and that the deed was obtained without consideration and by fraud and deceit.

[2, 3] The trial court, we will presume and must presume, from his judgment, found that Warner did not in fact make the conveyance, and that there in fact was no consideration therefor; that it was obtained by Ruggles by fraudulent representations as to its contents, he using the long, confidential relations existing between him and appellee as a means of perpetrating the fraud. The facts in the record warrant such finding, or will support it, and it is our duty to presume such finding as will support the judgment if the facts warrant it. On this point Warner is not contradicted, unless there are circumstances tending in that direction. Warner never having assented to a conveyance of section 3, the land in question, by virtue of the deed signed by him, through mistake on his part, and fraud on the part of Ruggles, the minds of the parties did not meet, and no agreement was consummated; that is, no deed conveying section 3 was, in fact, made. Link v. Page, 72 Tex. 592, 10 S. W. 699; Stacy v. Ross, 27 Tex. 4, 84 Am. Dec. 604; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823. This being true, there was no estoppel by deed. No such deed was made; and hence its covenants will not bind the appellee and operate to convey an after-acquired title.

[4] This brings us to a further question arising upon the record, which neither party has briefed, and here only present the question by argument or suggestion as being part of estoppel by deed. That is an equitable estoppel. We do not believe the pleadings of the appellant are sufficient to recover upon equitable estoppel. He does not claim title thereby. He brings this suit to remove the cloud from his title and to prevent Warner

from asserting title by virtue of a deed from Munsell to himself for the reason that in obtaining this deed appellee was the agent of appellant, and not entitled thereto. This being purely an equitable action in which the appellant set up specifically his rights, he should be held to his allegations. He neither in the original nor supplemental petition set up that, if the deed to Ruggles was not, in fact, Warner's deed, he (Warner) was grossly negligent in signing the deed, or fraudulently did so, and that there was a consideration paid for the land, and that appellant was ignorant of the title and relied thereon. Having failed to set up this ground of estoppel, he cannot, we think, recover on it. Reed v. Robertson (Sup.) 156 S. W. 196; Missouri, etc., v. Linton, 141 S. W. 129; Box v. Lawrence, 14 Tex. 545, on page 556; Horton v. Reynolds, 8 Tex. 284, on page 290.

[5, 6] In this case it is manifest from the record and the pleadings that appellant only relies upon estoppel to give him a title or right, and for that reason he should plead, in order to recover the land on the ground of estoppel, facts necessary to his recovery (Box v. Lawrence, supra).; but, if we shall waive the question of pleading, we have reached the conclusion, under the record in this cause, appellant would not be entitled to recover under equitable estoppel. In order to make the deed to Ruggles a deed by appellee, it is necessary to do so by equitable estoppel, and, when this is done, give appellant title to the land through estoppel by deed, and thereby vesting in appellant the after-acquired title by appellee from Munsell by virtue of a deed created by equitable estoppel. The deed relied upon in fact not being Warner's deed, he can only be estopped from saying it is not his deed by some fraudulent act or gross negligence on his part in signing it, which will now preclude him from telling the true facts. In order to estop one by deed or otherwise, usually it should be alleged and proven that there was a consideration paid the grantor therein for the land, and this must be done, independent of the recitals contained in the deed of the payment for the consideration. Haley v. Sabine, etc., 150 S. W. 598 (4), and authorities cited. The facts in this case show there was no consideration to Warner paid by Ruggles for the deed to the land. In the case of Robinson v. Douthit, supra, Judge Stayton, said:

"If the deed for want of valuable consideration was not sufficient as between the parties to pass title, or for other reasons was void as between them, then no estoppel would exist."

In that case it was held that there was a sufficient consideration, and in determining the question involved in that suit it was not necessary to a decision in that case, but we think an expression coming from this great jurist, entitled to consideration. In order to estop the appellee he must have been guilty of fraud or gross negligence in signing the deed. There is nothing to show fraud in this case in so signing the deed on the part of appellee. His fault was in signing the deed upon the representation of Ruggles, without reading the instrument. The confidential and trust relation existing between appellee and Ruggles may have robbed his act of gross negligence. This, however, would not, we are persuaded, justify or excuse Warner in negligently signing the deed, which caused an innocent third party to buy land on the faith of the deed. There is another element of estoppel which the record in this case shows to be wanting; that is, that Ruggles and Ford were destitute of all knowledge of the true state of the title or of all means of acquiring such knowledge. 2 Pom. Eq. Jur. § 806.

"The truth concerning these facts [the title] must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him." 2 Pom. Eq. Jur. § 805.

Again it is said:

"If at any time when he acted such party [claiming estoppel] had knowledge of the truth, or had the means by which, with reasonable diligence, he could acquire the knowledge, so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representations or concealment." 2 Pom. Eq. Jur. § 810.

This rule we apprehend should not be applied to a deed actually made by the grantor in his interest or that of his privies; but where he, in fact, did not make the declaration, but they are attributed to him because of his negligence, then we think, where a party claims title on such negligence, he should, before he can do so, show not only that he did not know, but that he could not have known by reasonable diligence, that the title was not conveyed by the deed. It must be borne in mind that the representations in the deed are that it conveys title to the land. Now, the grantee or his privies knew that the statements therein were not true, or, by the exercise of reasonable diligence, he could have known that the recitals were not true. He ought not to be allowed to estop appellee, who, in fact, did not make the deed, but only negligently stood by and permitted another to do so. Such conduct is analogous to that class of cases in which the silent conduct of a person affects title to land, and which the purchaser has relied on as estoppel, and where the record of the real title would furnish a means by which the other party might ascertain the truth, so that he cannot claim to be misled, and cannot insist upon estoppel. This statement of the rule must also be accepted with the further qualification that, if the person sought to be estopped is apprised of the ignorance of the buyer, and also that the buyer is relying upon the deed so fraudulently obtained, he cannot take advantage of this principle. In this case the appellee was not only ignorant of the fact that the land was included in the deed, but also was without any knowledge that appellant was

relying upon such deed. He was ignorant of the entire transaction.

[7] For a discussion of the principles above suggested, and where the title is of record, and the owner does not actively participate in the misrepresentation, see Wiser v. Lawler, 189 U. S. 260, 23 Sup. Ct. 624, 47 L. Ed. 802. In this case there was no opportunity to speak, or a duty to do so. Appellee did not know that appellant was relying on this deed, etc. It is said in Thor v. Oleson, 125 Ill. 365, 17 N. E. 780:

"The rule on this subject is, when the foundation of the estoppel insisted upon is silence, an omission to give notice of one's rights, the party relying upon the same must not have had the means of ascertaining the true state of the title by reference to the public records. Here the title of defendant was a matter that appeared upon the public records, and was open to the inspection of everyone." Clark v. Parsons, 69 N. H. 147, 39 Atl. 898, 76 Am. St. Rep. 157; Brinckerhoff v. Lansing, 4 Johns. Ch. 65, 8 Am. Dec. 538; Stewart v. Matheny, 66 Miss. 21, 5 South. 387, 14 Am. St. Rep. 538; Gray v. Zellmer, 66 Kan. 514, 72 Pac. 228.

It is said in the case last cited:

"It is contended, however, that, inasmuch as Koch consented that the title should be put in Zilmer, he thereby is now estopped, as against one who has acted to his disadvantage upon the theory that Zilmer was the true owner, from asserting otherwise. The doctrine of equitable estoppel does not warrant this conclusion. * * * Neither does the principle that, where one of two equally innocent parties must suffer, he who has put it within the power of the wrongdoer to defraud must be the one to suffer, apply; for here Koch * * * was proclaiming to all the world his rights, and this notice was as puissant, at least, as was the record."

The rule above established, by the various authorities cited, is, in part at least, supported by Link v. Page, 72 Tex. 592, 10 S. W. 701, and Steffins v. Milmo Bank, etc., 69 Tex. 513, 6 S. W. 823. We therefore conclude that it was not necessary that appellant should have had notice that there was no consideration for the deed or of the fraud in obtaining it, in order to defeat his claim under estoppel. Munsell's title was duly recorded when he purchased the land, and was notice that the title was in him, and not then in Hogle, Mahn, and Warner. Any sort of diligence on the part of appellant would have disclosed that fact.

The facts in this case suggest that appellant either had notice of the fraud, or was in possession of facts which would have led to such knowledge. He was informed that the land at the time of his purchase was worth $2 per acre; he paid only 50 cents per acre. The purported deed to Ruggles is dated September 21, 1908, and had not been recorded when the appellant got his deed from Ruggles April 29, 1909. Appellant did not examine the records to ascertain the condition of the title nor ask or obtain an abstract, but took only a written opinion of Ruggles, in which Ruggles stated Hogle and Mahn were shown to have the title by the record at the time he (Ruggles) got his deed. This statement was not true, as the record then showed. Hogle and Mahn had conveyed their title to Munsell in 1901, some seven or eight years previous, and this title was duly of record. The appellant left the deed he obtained from Ruggles with Ruggles, he says, to have recorded, and did not make any inquiry with reference to its record until late that fall, some seven or eight months after the date of his deed, and then found that it had not been recorded. He cannot, and does not, state whether he himself had the deed recorded, or whether Ruggles did. The two deeds, the one to Ruggles by appellee, and the one to appellant by Ruggles, were recorded on the same day, November 17, 1909, nearly seven months after the execution of appellant's deed. All this time appellant let his deed remain in the possession of Ruggles, the grantor. Ruggles was financially embarrassed and in distressed circumstances and sick at the time. The testimony of Warner and of Ford is susceptible of the construction that some time in the summer of 1909, before the deed was recorded, and before it was actually delivered to appellant, and before the death of Ruggles, which occurred in August, 1910, that the appellant then knew that the record title was in Munsell. At the time of requesting appellee to get a deed from Munsell he did not then mention or claim to have purchased the land from Ruggles, and did not so inform Warner, the appellee. This conclusion is based on Warner's testimony, and, according to his testimony, appellant concealed from him that he (appellant) claimed under this deed of his to Ruggles. These facts, together with other circumstances, are of such a nature, we think, that the court would have been warranted in drawing the inference that the appellant had notice of the fraud of Ruggles in procuring the deed. Both appellant and appellee resided in the same town and were in the same line of business, that is, land agents; yet at no time, even after appellant learned the state of the title, according to Warner's testimony, did he claim to have a deed to the land vesting title in him through the deed of appellee to Ruggles. If this was a fair transaction, we see no reason for all this concealment, and it suggests to the mind that appellant was aware that there was some vice or fraud in the transaction in obtaining the deed from appellee. Assignments Nos. 1 and 2 are therefore overruled.

[8, 9] The third proposition under the first assignment, to the effect that Warner accepted employment from Ford to get a deed from Munsell to Ford, and that, while in such employment, he obtained such deed to himself; the appellee thereby vesting title in Ford by virtue of such agency. This proposition is not germane to the assignment, and will be overruled. It is proper to state, however, that there is a conflict of evidence upon this point, and, the court having found against appellant's contention, upon the evi-

dence, this proposition, if properly briefed, should be overruled.

The third assignment will be overruled. The conclusion we have reached in the case renders the error set up by this assignment, if in fact it is error, harmless, in so far as appellant is concerned. The judgment of the court gives appellant a lien on the land for the money he paid for the land, with interest. If we are correct in our former conclusion, appellant would not be entitled to this lien.

[10] Appellee presents no cross-assignment on the action of the court in so decreeing the lien, and we cannot reform the judgment without such an assignment. The judgment on this point is clearly in appellant's interest, and it will not be disturbed on account of the alleged errors set up by the third assignment of error. We shall not, therefore, enter into a discussion of the effect of the contract made between appellant and Ruggles on the day that Ruggles executed the deed to appellant, and do not at this time express an opinion as to whether or not the court was correct in holding the deed and the contract and the evidence and circumstances then surrounding the parties established simply a mortgage from Ruggles to appellant to secure the money then obtained.

The fourth and fifth assignments will be overruled, and the case affirmed.