Hardiman v. Herbert.

HARDIMAN v. HERBERT.

Where the plaintiff claimed by junior title, alleging that the elder title was fraudulent and void, and the Court below rejected the plaintiff's title when offered in evidence, to which ruling the plaintiff excepted, this Court seemed to be of opinion that the plaintiff was not entitled to a revision of said ruling, because he did not adduce evidence of the fraud in the defendant's title, and show the same by a statement of facts.

If it were an open question, now for the first time to be determined, we might feel no hesitancy in deciding that two single men did not constitute a family in the proper acceptation of that term. But, what should be held to constitute a family, within the contemplation and intention of the Colonization Laws, was a question of judicial construction and interpretation, which was submitted to the authorities, appointed and empowered to execute those laws, and is believed to have been settled, in so far as respects the present question, by cotemporaneous construction and usage. It is believed to have been the construction and understanding of the law, adopted and acted upon, under Austin's first contract of colonization, and continued in practice down to the period of colonization under the law of the 24th of March, 1825, (which made special provision for the granting of land to single men,) to make to two or more single men, uniting in a petition, a grant of land as to a family.

Where questions were fairly submitted to the former authorities of the country, upon the construction of their laws, we have never undertaken to set in judgment upon their action, as a revising Court, authorized to entertain appeals from their adjudications; on the contrary, where questions were thus submitted and decided, we have held their actions and adjudications, as to rights acquired under them, conclusive upon all questions properly within their cognizance, when not affected by any question of intentional fraud, or unauthorized usurpation of authority.

Error from Colorado. This was an action of trespass to try title, brought by the plaintiff in error against the defendant in error. The defendant admitted that he was in possession of

Hardiman v. Herbert.

the land claimed by the plaintiff; and averred that he was rightfully in possession under a just and legal title duly recorded; and that he and those under whom he claimed, had had the undisturbed possession of the premises, since 1824.

At the Fall Term, 1849, the defendant filed, with other evidences of title, an admission in writing by the plaintiff, "that "the premises sued for were granted by the Mexican govern-"ment to A. W. McClain and James McNair, on the 24th "day of August, 1824, as colonists under the first contract "for the colonization of three hundred families, made between "Stephen F. Austin and said government; and that the copy "of the deed on file in the papers of this case, certified to by "the Commissioner of the General Land Office, and attested "by his seal, shall be read in evidence," &c. The plaintiff subsequently amended his petition, alleging that he claimed the land in controversy by virtue of a headright certificate, located previous to the commencement of the suit; and that the defendant's title thereto is void, for that it was obtained by the grantees therein falsely and fraudulently representing themselves as heads of families, when they were single men and not heads of families; and that the title was issued to them "in fraud of the law, and against law."

A jury was waived and the case submitted to the Court. There is no statement of facts. But it appears from a bill of exceptions in the record, that the plaintiff offered in evidence a certificate for a league of land, issued to one Cooper on the 13th of January, 1840, and transferred to the plaintiff; which was objected to by the defendant, and rejected by the Court. There was a judgment for the defendant; and the plaintiff brought a writ of error.

*R. J. Rivers*, for plaintiff in error.

*Harris & Pease*, for defendant in error.

WHEELER, J. The plaintiff expressly admitted the defend-
82

ant's title; but sought to impeach it as having been fraudulently and illegally issued. Having admitted the title, before he could claim a right to recover the land embraced in it, by virtue of his junior title, it devolved on the plaintiff to establish the invalidity of the defendant's title. Until that title was successfully impeached, the plaintiff's title could not avail him. And, the trial being by the Court, in the absence of a statement of facts, it would seem to be a legitimate presumption in favor of the judgment, that the plaintiff had failed successfully to impeach the title of the defendant; and that it was for that reason that the Court rejected the evidence of title relied on by the plaintiff. Unless the plaintiff was successful in invalidating the title of the defendant, he cannot have been injured by the ruling in question; and can have no just cause to complain of the judgment.

But waiving this view of the case, the principal question in the Court below, was upon the validity of the defendant's title; and it doubtless was to obtain a final determination of that question, that the case was brought to this Court. We shall proceed, therefore, to dispose of that question; which will dispose of the case, and will supercede the necessity of considering the other questions presented.

The title, though, as appears by the admission of the plaintiff, filed among the papers in the cause, is not copied into the record. This is not the fault of the appellee, and cannot operate to his prejudice. It is admitted to have been issued to the grantees by the Commissioner of Austin's colony in 1824; and it is to be taken to have been issued in due and legal form. The fact in which the alleged fraud and illegality were charged to consist, was in making the grant to two single men, as to a family. This evidently was the sense in which these averments were intended, and, as there is no averment of any other fact or circumstance affecting the title, to which these averments can apply, they must be taken and considered in that sense. It evidently was not intended to impeach the title on the ground of any actual imposition or deception practiced

in obtaining it; or any fraud or illegality other than that the title was so made and obtained.   There is no other averment of fact to which these charges can apply, or in reference to which evidence would have been admissible under the averments.   The plaintiff, therefore, is to be understood as impeaching the title as void, on the ground, that, it was fraudulent and contrary to law to issue to two single men a title for the quantity of land to which families were entitled.   And, as we have before intimated, as there is nothing in the record appearing to the contrary, we might be warranted in presuming in favor of the judgment, that no evidence was introduced to impeach the grant, even in this respect.   But, assuming that it appeared upon the face of the title, or in proof, that the grant was of the character alleged, is it, on that account, to be deemed and held to be void ?

If it were an open question, now for the first time to be determined, we might feel no hesitancy in deciding that two single men did not constitute a family in the proper acceptation of that term.   But what should be held to constitute a family within the contemplation and intention of the Colonization Laws was a question of judicial construction and interpretation, which was submitted to the authorities appointed and empowered to execute those laws, and is believed to have been settled, in so far as respects the present question, by cotemporaneous construction and usage.   It is believed to have been the construction and understanding of the law, adopted and acted upon under Austin's first contract of colonization, and continued in practice down to the period of colonization under the law of 24th of March, 1825, (which made special provision for the granting of land to single men,) to make to two or more single men uniting in a petition, a grant of land as to a family.   This, doubtless was done under the belief, that, although the law, in terms, mentioned only families ; yet this was a comprehensive term, susceptible of a more enlarged or more restricted meaning, and as it evidently was the policy of the law to encourage the immigration of single men as well as of

men with families, it ought to be so construed and administered as to accomplish that object. It was supposed that grants of this character might be made consistently with the spirit and policy, though not with the letter of the law, by the grantees uniting in the application, and the performance of the duties imposed, and coming under obligation to observe and perform the duties of citizens, and the requirements of the law; and whatever opinion may now be entertained of its propriety, it was the construction adopted and acted upon at the time; and was sanctioned by usage in the colony, and by the silent acquiescence of the legislative and judicial authorities of the country. For it is scarcely to be supposed that the practice escaped the knowledge of those in whom the judicial and legislative authority was vested.; and its propriety does not appear ever to have been questioned.

It is matter of history, and it is known to the Court by its records, that such was the construction and practice under the law. Under this construction titles have been acquired and transmitted, and rights have grown up, which have hitherto been respected. Upon titles thus acquired parties have reposed for a quarter of a century, without the apprehension of insecurity. Their validity does not appear ever to have been questioned or doubted by the former authorities of the country. Under these circumstances, we think the question of the validity of such grants cannot, at this day, be considered an open question. Where questions were fairly submitted to the former authorities of the country, upon the construction of their laws, we have never undertaken to sit in judgment upon their action, as a revising Court, authorized to entertain appeals from their adjudications. On the contrary, where questions were thus submitted and decided, we have held their action and adjudications, as to rights acquired under them, conclusive upon all questions properly within their cognizance, when not affected by any question of intentional fraud, or the unauthorized usurpation of authority. The security of property and the repose of society demand the consistent maintenance of

this principle. If it were to be departed from, no man could rely securely upon any title, however justly acquired. If each succeeding Judge or Court were at liberty to disregard the adjudications of his predecessors, rights would depend upon the fluctuating opinions of men, rather than the firm and stable foundations of past and final, legal adjudications, and the secure basis of judgments; beyond the reach of the accidents of individual opinion, and the influence of unscrupulous and reckless innovation. The law, in its principles and practice, is eminently conservative; and upon its maintaining that character, its value as the shield and palladium of the rights of person and property must·ever depend.

Upon the principles which have been recognized in repeated decisions of this Court, it must, we think, be held, that cotemporaneous construction and usage have settled the law upon this subject, in favor of the validity of the present title. (Houston v. Robertson, 2 Tex. R. 26, 27 ; Holliman v. Peebles, 1 Id. 699, 709 ; Edwards v. James, 7 Id. 372 ; Hancock v. McKinney, Id. 384 ; Jenkins v. Cambers, 9 Id. 167 ; Robertson v. Teal, Id. 344 ; Bissell v. Haynes, Id. 556 ; Styles v. Gray, 10 Id. 503:) There was no error, therefore, in rejecting the plaintiff's evidence of a junior title ; and the judgment is affirmed.

Judgment affirmed.