MORTIMER v. JACKSON. (No. 2568.)

(Commission of Appeals of Texas, Section B. Nov. 20, 1918.)

1. EVIDENCE ⬡343(2)—ADMISSIBILITY—ABSTRACTS.

Abstracts furnished under Rev. St. art. 7743, are admissible in trespass to try title to show common source.

2. TRESPASS TO TRY TITLE ⬡11—TITLE OF PLAINTIFF.

Where defendant's grantor, engaged to marry a woman who had two children by former marriage, bought land, the title to which was taken in her name, in trust for him, pending his divorce, and after marriage he conveyed to plaintiff, and on his wife's death her mother assumed to convey to defendant, defendant had no title from the common source since the two children survived; but plaintiff had equitable title, at least, from the common source, entitling her to recover.

3. TRESPASS TO TRY TITLE ⬡12—RIGHT TO POSSESSION.

Where the grantor of plaintiff in trespass to try title had possession by a tenant prior to the entry of defendant, plaintiff's possession was sufficient to support a judgment as against defendant who was a mere trespasser.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Dora Jackson against Paul Mortimer, Jr. To review a judgment in the Court of Civil Appeals (155 S. W. 341), affirming a judgment for plaintiff, defendant brings error. Affirmed, as recommended by the Commission of Appeals.

E. H. Powell and Geo. Powell, both of San Antonio, for plaintiff in error.

C. M. Chambers, of San Antonio, for defendant in error.

### Statement of the Case.

MONTGOMERY, P. J. Suit by Dora Jackson against Paul Mortimer, Jr., in trespass to try title to recover lot 2, block 8, in the city of San Antonio, Bexar county, Tex.

Defendant, Mortimer, answered by general demurrer, general denial, and plea of not guilty.

Trial by jury. After the evidence was concluded, the court gave a peremptory charge to find for plaintiff. Judgment in accordance with verdict. Mortimer appealed, and the judgment was affirmed by the Court of Civil Appeals, Fourth District. 155 S. W. 341.

The plaintiff, Dora Jackson, offered the following chain of title:

(1) Warranty deed from Charles Nunn to Rhoda Harris, dated February 17, 1892.

(2) Warranty deed from Rhoda Harris to George R. Stumberg, dated April 4, 1895.

(3) Warranty deed from George R. Stumberg, Jr., to Mrs. Diana Singleton, dated April 29, 1901. This deed recites a cash consideration of $75 and reserves a vendor's lien to secure a vendor's lien note for $125, due on or before two years after date.

(4) A release of the vendor's lien retained in the deed from George R. Stumberg, Jr.,

to Mrs. Diana Singleton, dated February 26, 1903, executed by George R. Stumberg, Jr., to Diana Singleton, reciting the payment of the note.

(5) Warranty deed from Martin Milholland to Dora Jackson, dated January 22, 1910.

All said instruments properly described the property in controversy and were duly acknowledged and recorded. The plaintiff also showed by certified copy of marriage license and return that Martin Milholland and Diana Singleton were married on March 5, 1902.

George R. Stumberg, Jr., testified in substance:

That he executed the deed to Diana Singleton, and that the contract of purchase was made with him by Milholland, and that at the time he gave the deed both Milholland and Diana Singleton were present, and that on that occasion Milholland, in presence of Diana Singleton, made the following statement: "I have got a divorce pending now in the court, and I want to buy this piece of property, and I want to buy it now; but I will tell you, George, I want you to deed the property to Diana, but I will make all the payments, the property shall be mine, and I want you to get Diana's verbal agreement here she will give me back a deed to this property when the divorce suit is finally settled." That Diana Singleton agreed to this, and the deed was made to Diana Singleton.

He further testified that Milholland made every payment for the lot. The deed to Diana Singleton was made while she was a widow, but the note was paid off after her marriage to Milholland.

Plaintiff proved the execution of, and offered in evidence, a written instrument, dated February 27, 1903, and signed "Diana Holland," who was proved to be the same person formerly known as Diana Singleton, as follows:

"This certifies that Martin Holland has paid out of his own separate estate all the consideration price for lot 2, block 8, on Virginia street, in San Antonio, Texas, bought from George R. Stumberg, Jr., said consideration price, amounting to $250 and interest, and deed should therefore have been in his name. This instrument is given to evidence that fact and that he has as his separate estate such claim."

Martin Milholland, the evidence shows, was also known as "Martin Holland." Martin Milholland also testified by deposition that he paid all the purchase money for said lots, and he produced the written statement of "Diana Holland" above set out. The proof showed that Diana Milholland was dead, and that she left surviving her two children, the fruit of a marriage prior to her marriage to Milholland.

The proof showed that the lot in controversy had an old dilapidated house· on it, which Milholland testified was not occupied by him, but which "we (meaning evidently himself and wife) had rented out."

The defendant, Mortimer, introduced a deed from Mary Williams to Paul Mortimer, Jr., dated August 4, 1909, and duly acknowledged and recorded, conveying the lot in controversy. He also introduced the deed from George R. Stumberg, Jr., to Diana Singleton, being the same deed introduced by plaintiff. The defendant, Mortimer, testified that he bought the lot from Mary Williams, and that she had possession of it when he bought it, and that, since buying it, he had rented it "off and on"; it being vacant a good part of the time.

Mary Williams testified that Diana Singleton, who married Milholland, was her daughter, and was dead; that she left two children, the issue of a marriage to one Whitehead. This witness further testified that her daughter had the money to buy the lot before she married Milholland; that she got some money from the city on account of a personal injury; that she let her daughter have $5 and her daughter told her what she was going to do with it; that Diana got Milholland to buy the lot, and borrowed $5 from her to pay for it; that she did not know who paid for it; that Diana told her she gave Milholland the last money; that she did not see her give him the money; that she had all the money, except $5, and came to her for that. This witness testified she knew nothing about her signing a note; that she saw Diana give Milholland part of the money—saw her give him $4 or $5 two or three times. This witness further testified that she did not know who bought the lot, but that Milholland put the lot in Diana's name. The testimony of this witness was uncertain and contradictory, and it is impossible to get a clear idea from her testimony.

It was agreed that both plaintiff and defendant filed abstract of title from the sovereignty of the soil, and said abstracts were the same, except the memorandum made before Jas. Ryan. (This refers to the acknowledgment in writing by Diana Singleton of Milholland's having paid for the property.)

## Opinion.

The sole question in this case is whether the district court was authorized under the facts to give a peremptory charge to the jury to find a verdict for the plaintiff. If the evidence properly admitted authorized the giving of the peremptory charge, then the judgment of the Court of Civil Appeals, affirming the judgment, should be here affirmed. As we view this case, the evidence fails to show a title from the sovereignty of the soil, but does show that George R. Stumberg, Jr., is the common source of title.

[1] The plaintiff, Dora Jackson, claimed title from George R. Stumberg, Jr., through the deed to Diana Singleton and the deed from Martin Milholland, and claimed that Milholland, having paid the purchase money under the agreement shown in the statement of the case, had the equitable title to the lot, and that this title passed to her by the conveyance from Milholland. The defendant, Mortimer, claimed title through the deed from George R. Stumberg, Jr., to Diana Singleton, and through the deed from Mary Williams, the mother of Diana Singleton,

made after the death of Diana Singleton. In other words, his claim was based on the deed to Diana Singleton, and the alleged descent of the property to Mary Williams, her mother, and the deed from Mary Williams. This claim from the common source is shown by the introduction by defendant of the deed from Geo. R. Stumberg, Jr. It is well settled that abstracts furnished under article 7743, R. S., are admissible to show common source. Wichita Land & Cattle Co. v. Ward, 1 Tex. Civ. App. 307, 21 S. W. 128; Gonzales v. Batts, 20 Tex. Civ. App. 421, 50 S. W. 403.

[2] It is apparent that the defendant, Mortimer, had no title from the common source, as Diana Jackson left surviving her two children, who inherited whatever property she owned at the time of her death.

If the plaintiff, Dora Jackson, had either a legal or equitable title from the common source, she was entitled to recover.

After a careful consideration of the entire record, we think that the evidence conclusively shows that, when the conveyance was made to Diana Singleton, she agreed to hold the title in trust for Milholland, and that Milholland paid all, or practically all, of the purchase money to George R. Stumberg, Jr., and that therefore his conveyance to Dora Jackson vested her with such equitable title in the land as would support the action of trespass to try title.

[3] In addition to the foregoing, we think that the testimony of Milholland to the effect that he had actual possession of the property by tenant prior to the time that the defendant, Mortimer, ever had such possession, would be sufficient to support the judgment upon the theory of prior possession; it being conclusively shown that defendant, Mortimer, was a trespasser. In our judgment, the opinion of the Court of Civil Appeals properly disposes of all assignments of error complaining of admission of testimony and of the refusal of the court to make additional parties.

It is our opinion that the judgment should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is approved and will be entered as the judgment of the Supreme Court.

---

&⟋For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes