ALLEN v. VINEYARD et al. (No. 7643.)

(Court of Civil Appeals of Texas. Galveston. April 10, 1919. Rehearing Denied May 8, 1919.)

1. ACTION ⬅50(3)—PARTIES—MISJOINDER.

The several owners of separate parcels of land composing a large tract cannot maintain a joint suit for the entire large tract, but each must sue for his respective part.

2. TRESPASS TO TRY TITLE ⬅12—TITLE TO SUSTAIN ACT—PRIOR POSSESSION.

Proof of prior possession is sufficient to sustain an action of trespass to try title, when defendant is shown to be a mere naked trespasser.

3. PROPERTY ⬅9 — OWNERSHIP — PRESUMPTION FROM POSSESSION.

Possession of land is prima facie proof of ownership.

4. PLEADING ⬅387—ISSUES—VARIANCE.

The allegata and probata must correspond.

Appeal from District Court, Ft. Bend County; Saml J. Styles, Judge.

Trespass to try title by R. E. Vineyard and others against C. H. Allen, wherein Lelia Hill intervened. Judgment for the intervener and plaintiffs, and defendant appeals. Affirmed in part, and reversed and remanded in part.

Stevens & Stevens, of Houston, for appellant.

H. A. Cline, of Wharton, and F. X. Joerger, of Rosenberg, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by R. E. Vineyard and 35 others against appellant, C. H. Allen, to recover a tract of 105.5 acres of land, a part of the Isaac McGary and Elizabeth Powell leagues in Ft. Bend county.

Plaintiffs' petition, after alleging ownership and possession of the land, which is described by metes and bounds, and that the defendant, on January 1, 1913, unlawfully entered upon the premises and ejected plaintiffs therefrom, and unlawfully withholds from plaintiffs the possession thereof, contains the following allegations:

"Plaintiffs further show to the court that on said first day of January, A. D. 1913, the plaintiffs were in joint possession of the aforesaid land and premises, each and all of said plaintiffs by mutual consent and agreement having the right of entry and possession of said entire tract, and every part thereof, and were so in the actual possession thereof on the date mentioned, and the said land was on said date inclosed by fence, and plaintiffs were denying any and all other persons the right of entry or possession thereof save only the plaintiffs herein."

Plaintiffs further pleaded title under the three, five, and ten years statutes of limitation.

The answer of defendant contained the following plea in abatement, followed by a plea of not guilty and pleas of three, five, and ten years limitation:

"For plea in abatement this defendant says that the plaintiffs cannot maintain their action because he says that they are not tenants in common of the land described in their petition, but that each of said plaintiffs claim a segregated part of said land, and said plaintiffs have been improperly joined in this proceeding, for the reason that, if any cause of action they have, or either of them, said causes of action are several and peculiar to each of said plaintiffs, and defendant offers to make proof of this fact; wherefore he prays in limine that this cause be abated, and proceed no further."

Mrs. Lelia Hill intervened in the suit claiming an undivided interest in certain specified tracts out of the 105.5 acres described in plaintiffs' petition. To this petition in intervention the defendant answered by a plea of not guilty and pleas of limitation.

There was a jury trial in the court below, and, after hearing the evidence, the trial judge instructed the jury to return a verdict in favor of the plaintiffs and intervener. A verdict was returned in accordance with these instructions, and judgment was rendered thereon in favor of the plaintiffs and intervener.

The record discloses the following facts:

The titles of plaintiffs are deraigned as follows: It was agreed that the common source of title was in W. E. Kendall and S. A. Hackworth. S. A. Hackworth conveyed his interest to W. E. Kendall. Under the will of W. E. Kendall his estate passed to his wife, Belle S. Kendall, and his children, William Earle Kendall, Odin M. Kendall, T. Clarence Kendall, and Frank F. Kendall, Belle S. Kendall being appointed independent executrix. Kendall and Hackworth had conveyed to the plaintiffs and those under whom some of the latter held various subdivisions of the 105.5 acres of land in controversy by specific metes and bounds about the year 1879. There is no controversy over the fact that the plaintiffs originally deraigned title under certain deeds from Kendall and Hackworth, executed about the year 1879, which deeds attempted to convey specific parts of the 105.5 acres of land in controversy, and that on account of a supposed defective description a substitute deed was executed by the devisees of W. E. Kendall. This substitute deed, which was executed on January 30, 1914, contains the following recitals:

"Whereas by deeds heretofore executed by W. E. Kendall and by the grantors herein, which said deeds are recorded in the records of Ft. Bend county, Texas, certain tracts of land were sold and conveyed out of a tract of a hundred, five and $5/10$ (105.5) acres in the Isaac McGary and Elizabeth Powell leagues in Ft. Bend county, Texas; and whereas, the several purchasers of said tracts of land under said conveyance, took possession of the several tracts conveyed to them and have since the date of said deeds claimed same in severalty; and, whereas, a question has arisen as to the validity and sufficiency of the description in the several deeds conveying the tracts of land hereinafter described:

"Now, therefore, we, Belle S. Kendall (independent executrix under the will of W. E. Kendall, deceased), W. E. Kendall, F. F. Kendall, O. M. Kendall and Clarence Kendall, of Harris county, Texas, for and in consideration of the sum of one dollar ($1.00) to us in hand paid, and for the further consideration of the correction of any defects which may appear of record, or which may have existed in any of said conveyances, which were not recorded, have granted, sold, conveyed and quitclaimed unto Ike Graves, Lillie Jackson, Frank Mikulencak (the heirs of Fayette Thomas), T. B. Mitchell, Nathan Axel (the heirs of Ike Foster), and Calvin Brown of Ft. Bend county, Texas; R. E. Vineyard, Wharton county, Texas; Charley Mooney (the heirs of Andy Taylor, Robert Foster, Robert Fulton and the heirs of Reuben Lewis, deceased), all of Ft. Bend county, Texas, conveying to each the particular tract hereinafter described and designated, the said entire tract being described as follows."

The deed then describes the 105.5-acre tract by metes and bounds, and then describes and conveys in severalty to the vendees above named, most of whom are plaintiffs in this suit, separate tracts out of the 105.5 acres;

each of said separate tracts being fully described by metes and bounds.

The evidence shows that in 1902 or 1903 the owners of the several tracts of land agreed to fence it and hold it together. The land was fenced under this agreement by the claimants of the several tracts, each person holding an interest in the land contributing money or labor in fencing it. Under this agreement each person owning one of the several tracts in the inclosure could pasture therein five head of cattle.

No one resided on the land. The owners of the several tracts owned other lands on which they lived, and these lands, which were all timbered, were purchased and held for pasturage purposes, and to furnish the several owners with a supply of timber and firewood. In inclosing the land no fence was built along the Bernard river, which was one of the boundaries of the 105.5 acres. There is evidence that the river was often so low that for a considerable portion of its course along this land it formed no barrier to ingress and egress upon and from the land. The evidence is conflicting as to the length of time the fences around the land were kept up.

The defendant Allen claims under a deed from James Armstrong executed on March 4, 1911. The deed describes the land conveyed as follows:

"The following tract or parcel of land situated in Ft. Bend county, Texas, being a part of the land conveyed to me by Kendall & Hackworth, a firm composed of W. E. Kendall and S. A. Hackworth, by deed dated January 9, 1879, and of record in Book M, page 541, of the Deed Records of said Ft. Bend county.

"The tract or parcel of land herein conveyed is known as timber lot No. 5, containing —— acres of land, according to a plat and field notes of a subdivision of the lower half of the Isaac McGary league, situated on the Bernard river, and known as my timber tract, and more particularly described as follows:

"Beginning at a point where an extension of the south line of a tract of seventy acres of land now known as the Thomas Jennings tract, would intersect the west boundary line of a one hundred and fifty-two acre tract deeded to B. F. Williams by W. E. Kendall, November 11, 1875; thence south 30 east with said Williams west boundary line, to intersect the Bernard river; thence up said river with its meanders to a point where a line of the Reuben Lewis and Thomas Jennings tracts intersect the said Bernard river; thence N. 30 W. following said Lewis-Jennings line to an inner corner of said Thomas Jennings tract; thence N. 60 E. following said Jennings south boundary line to the place of beginning, containing —— acres, more or less."

On January 9, 1879, Kendall and Hackworth conveyed to James Armstrong two tracts of land described as follows:

"All of that tract or parcel of land situated in Turkey creek and the east San Bernard river in said Ft. Bend county, being a part of the

upper half and lower half of the Isaac McGary league of land, and more particularly described as prairie lot No. 66, embracing about 175 acres out of the upper half of said league in Turkey creek, upon which the said Armstrong now lives, and timber lot No. 15 on said river, containing about 25 acres of land out of the lower half of said league of land, said lot No. ────── and 15, containing 200 acres of land more or less according to field notes and plat of said land as made by J. W. Hackworth, which will be a matter of record as soon as the same can be procured of said surveyor."

The intervener showed title under the common source to the interest in the several tracts of land claimed by her and awarded her by the judgment.

Allen testified that when he purchased from Armstrong in 1911, and when he took possession in 1912, the land was not inclosed with any fence, and cattle went in and out from the land at will. He further testified that he tried to get some of the owners of the other tracts in the 105.5 acres to agree to have the lines of the several tracts established, so that each would know the exact location of his tract. He further testified:

"These people would not agree to my proposition, but they told me that they were going to sue for it and get it all. I claimed 25 acres under the Armstrong deed, and they would not make any agreement at all, so after that time I kept the fence up for my own protection. I built the fence there, and kept it up for my protection. It so happened that my fence inclosing my own land inclosed theirs. The fence inclosing my own field outside of where this fence that I built on the Mitchell line and the Armstrong line necessarily fenced it all. * * * All that I am claiming in this suit and all that I have ever claimed is the title I got from Armstrong under his deed, and if I haven't got any title under the Armstrong deed I have no title to any of that land."

He also expressly says he does not claim either of the respective tracts in which the intervener recovered an interest.

The judgment rendered by the court below contains the following recitals:

"And on the 31st day of October, A. D. 1917, after the plaintiffs and intervener had rested their cause, the defendant, C. H. Allen, urged his plea in abatement, and, after hearing same, the court is of the opinion, and it is so ordered, adjudged, and decreed, that said plea of abatement should be sustained as to plaintiffs' right to recover jointly for damages sustained by them for trespass to the premises described in their petition and overruled as to all other things therein prayed for, to which ruling of the court defendant, C. H. Allen, then and there in open court excepted."

Appellant preserved and presents to this court a proper bill of exceptions to the action of the trial court in not fully sustaining his plea in abatement if it was shown by the undisputed evidence that plaintiffs owned the land in severalty.

The first assignment of error complains of this ruling of the court.

[1] Since the case of Curry v. York, 3 Tex. 357, it has been the uniform rule of decision in this state that the several owners of separate parcels composing a large tract of land cannot, even under our liberal system of pleading, maintain a joint suit for the entire large tract, but each must sue for his respective parcel. Punchard v. Delk, 55 Tex. 304; Paschal v. Dangerfield, 37 Tex. 273; Ford v. Sutherland Springs Co., 159 S. W. 879. Appellees do not question this general rule, but insist that it is not applicable in this case, because plaintiffs alleged and proved a joint possession of the land, and upon proof of such possession were entitled to recover same from defendant, whom the evidence shows was a mere trespasser, and the judgment in this case only awards them possession of the premises.

[2, 3] In support of this contention appellees cite the case of Parker v. Ft. Worth & D. C. Ry. Co., 71 Tex. 132, 8 S. W. 541, and other cases which announce the well-settled rule that proof of prior possession is sufficient to sustain an action of trespass to try title when the defendant is shown to be a mere naked trespasser. This rule, which is one of evidence, based upon the further rule that possession of land is prima facie proof of ownership, and so in actions of trespass to try title, when the defendant is shown to be a mere naked trespasser, the plaintiff sufficiently establishes his right to recover by proof of his prior possession.

[4] The other rule which forbids joint recovery of land when the proof shows that the plaintiffs own in severalty is but a specific application of the fundamental rule that the allegata and probata must correspond. If the petition alleges that the plaintiffs own the land jointly such allegation is not supported by proof that each of the several plaintiffs own a separate and distinct parcel of the land, and any judgment that could be rendered in such case would be either without support of the pleading or in the evidence. Appellees, in order to avoid the effect of this rule, alleged that they were in joint possession of the premises under a joint and mutual agreement to occupy and hold the land jointly. If it be conceded that upon proof of this allegation they would be jointly entitled to recover possession, the action of the trial court in instructing a verdict in their favor on this theory cannot be sustained, because the evidence was sharply conflicting on the issue of whether the plaintiffs were in possession of the land when defendant entered and took possession, and also upon the issue of whether defendant showed title to 25 acres of the land claimed by him. Upon this state of the evidence the court was clearly wrong in instructing a verdict for plaintiffs, and appellant's assignment,

complaining of the judgment on this ground, must be sustained.

It follows from these conclusions that the judgment of the trial court as between plaintiffs and defendant must be reversed, and the cause remanded.

The intervener having shown title to the land claimed by her, and her title not being questioned by the evidence offered by plaintiffs or defendant, the judgment in her favor should be affirmed. It is accordingly ordered that judgment of the trial court in favor of the intervener be affirmed, and the judgment in favor of plaintiffs be reversed, and the cause remanded for a new trial of the issues between plaintiffs and defendant.

Affirmed in part, and reversed and remanded in part.

---

&#x27E8;=&#x27E9;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes