**SOUTHWESTERN SETTLEMENT & DEVELOPMENT CO. et al. v. VILLAGE MILLS CO. et al. (No. 853.)***

(Court of Civil Appeals of Texas. Beaumont. Nov. 28, 1922. Rehearing Denied Dec. 13, 1922.)

1. **Names ⬯18—Identity of name ordinarily sufficient evidence of identity of person.**

While identity of name is ordinarily deemed sufficient evidence of identity of person, the strength of this presumption is determined by the facts of each particular case, and in the absence of suspicious circumstances is conclusive.

2. **Names ⬯18—Suspicious circumstances held to destroy presumption arising from identity of name.**

In trespass to try title to one-third of a league of land, where plaintiffs claimed through a deed by one F. L., conveying "my league of land to which I am entitled as a citizen of this municipality," while defendants claimed under a certificate to F. L., which recited that he was a single man and entitled to one-third of a league, and it was necessary for plaintiffs to show that the persons named in the two instruments were identical, that a single man was only entitled to one-third of a league, while a married man or the head of a family was entitled to more than a league, held to destroy the presumption arising from identity of name and to cast the burden of proving identity on plaintiffs.

3. **Evidence ⬯342—List or orders of survey and certified copy of such orders held admissible as archives of land office.**

In trespass to try title, wherein defendants claimed by regular chain of title back to a patent from the Republic of Texas, a list of orders of survey made out as they were issued by a commissioner of that Republic, and a certified copy of the order of survey held admissible as archives of the land office, in view of Rev. St. 1911, art. 82, subds. 1, 5, relating to documents of the Republic of Texas.

4. **Evidence ⬯83(3)—Execution and indorsement of official document presumed.**

Where it is sought to introduce in evidence a list of orders of survey made by a land commissioner of the Republic of Texas in his official capacity, the execution and indorsement by such commissioner will be presumed.

5. **Evidence ⬯89—Presumption of due execution of ancient instrument may be rebutted.**

While the due execution of an ancient instrument will be presumed, it may be rebutted by evidence to the contrary.

6. **Evidence ⬯318(3)—Facts recited in official document held not hearsay.**

In trespass to try title, where an official list of orders of survey made by a commissioner of the Republic of Texas was introduced, the facts recited in the list were not hearsay, since they were found by the commissioner in his official capacity and duly entered of record.

7. **Evidence ⬯342—Certified copy of archive of land office held admissible.**

Where an official document constitutes an archive of the land office, a certified copy thereof is admissible in evidence.

8. **Evidence ⬯333(7)—Of title by commissioner of Republic of Texas held archive of land office.**

If a list of orders of survey made by a commissioner of the Republic of Texas was used as evidence for the issuance of title by such commissioner, the list became an archive of the land office of the United States, which had taken over its custody, and as such was admissible in evidence.

9. **Evidence ⬯372(10)—List of orders of survey held admissible as ancient instrument.**

A list of orders of survey made by the land commissioner of the Republic of Texas held admissible as an ancient instrument in trespass to try title on the question of the identity of the person to whom title had originally been issued.

10. **Public lands ⬯174—Certificate of land commissioner of Republic of Texas held conclusive as to facts recited therein.**

In trespass to try title a certificate of the board of land commissioners of the Republic of Texas on which the land was patented held conclusive as to the facts recited therein.

11. **Trespass to try title ⬯6(1)—Rule of prior possession inapplicable, where opposite party has regular chain of title and claimants have none.**

In trespass to try title, the rule of prior possession has no application, where defend-

ants hold under a regular chain of title from the original grantee, and where it affirmatively appears that plaintiff has no title.

**12. Covenants ⚫131—Warrantors held liable for interest from date of deed, instead of from date of eviction.**

Covenantees should receive interest on the purchase price of the land from their warrantors from the date of the deed, instead of from the date of eviction.

### On Rehearing.

**13. Covenants ⚫130(4)—Measure of damages on general warranty of title, where grantee never in possession stated.**

When the grantee has not been in possession of the demised premises the measure of damages in a suit on general warranty of title to land is the purchase money, with interest at the legal rate from the date of payment.

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Trespass to try title by the Southwestern Settlement & Development Company and others against the Village Mills Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed in part, and in part reformed and affirmed.

See, also, 230 S. W. 869.

Kennerly, Lee & Hill and J. G. Logue, all of Houston, and H. O. Head, of Sherman, for appellants.

W. D. Gordon, Thos. J. Baten, O. S. Parker, and Oliver J. Todd, all of Beaumont, for appellees.

WALKER, J. This was a suit in trespass to try title, instituted by appellants against appellees, and involved the Frederick Lewis one-third league of land in Hardin county. A former appeal of this case, opinion by this court, is reported in 230 S. W. 869. The trial was to a jury, and on the following special issues, answered as indicated:

"Was Frederick Lewis, who executed the deed to Samuel Rogers of date November 1, 1835, the same person as Frederick Lewis named in certificate No. 75 of the board of land commissioners of Liberty county, dated February 1, 1838? You will answer 'Yes' or 'No' to this question, as you find the fact to be, and write your name on a separate sheet of paper, signed by your foreman, and thereupon return your answer into court."

Answer: "No."

"Did Frederick Lewis, named in certificate No. 75 of the board of land commissioners of Liberty county, dated February 1, 1838, transfer to Samuel Rogers his headright claim to land under the colonization laws of Coahuila and Texas? Answer 'Yes' or 'No,' as you find the facts to be."

Answer: "No."

"In the light of the facts and circumstances in evidence before you, is it more reasonably probable that Frederick Lewis, named in cer-tificates No. 75, of the board of land commissioners of Liberty county, dated February 1, 1838, transferred to Samuel Rogers his headright claim to land under the colonization laws of Coahuila and Texas than that he did not make such transfers? Answer 'It is' or 'It is not,' as you find the facts to be."

Answer: "It is not,"

judgment was rendered for appellees. From that judgment appellants have duly prosecuted their appeal to this court.

The land in controversy was patented to the heirs of Frederick Lewis by patent dated the 12th day of April, 1854, on the following certificate:

"No. 75. Office of the Board of Land Commissioners, Republic of Texas, County of Liberty. This certifies that Frederick Lewis emigrated to Texas in the year 1830, and died in this country in the year 1835, was a single man, had sold his headright, and under the laws is entitled to one-third of a league of land. Liberty, February 1, 1838. Attest: Geo. W. Miles. Dan T. Cort, President, B. L. C. Henry B. Johnston, Henry Wise Tarley, Associate Commissioners."

Appellees hold under a regular chain of title from and under the heirs of Frederick Lewis. Appellants offered in evidence the following deed:

"Department of Nacogdoches, Municipality of Liberty. Know all men by these presents that I, Frederick Lewis, do bind myself, my heirs and assigns, to make to Samuel Rogers, or any other person he may think proper to appoint or direct, a title to my league of land to which I am entitled to as a citizen of this municipality, and upon my refusal to comply with this obligation I do hereby authorize any court to compel me to do so, and I do further authorize the said Rogers to enter on said land and to hold it by a legitimate title, clear of my heirs and representatives. In witness whereof I have hereunto set my hand in the presence of the subscribing witness this first day of November in the year of our Lord eighteen hundred and thirty-five. There being no stamp paper to be got, we have written this on common paper. Frederick X Lewis.
                                          his
                                          mark
"Acknowledged before me this 2d day of Novr., 1835. Charles C. P. Welch, Const. Commissio."

They hold under a regular chain of title from and under Samuel Rogers, the grantee in the above deed.

[1] On the proposition that identity of name is sufficient evidence of identity of person, appellants insist that they made out their title to the land by introducing in evidence the certificate, the deed to Samuel Rogers from Frederick Lewis, and chain of transfers to themselves from and under Samuel Rogers. The legal proposition advanced is sound. "Identity of name is ordinarily deemed sufficient evidence of identity of person.". McNeil v. O'Connor, 79 Tex. 227, 14

---

S. W. 1058. But the strength of this presumption is determined by the facts of each particular case. It is not a rule of law, but only a rule of evidence. If the evidence casts no suspicion on the transfer, the presumption arising from the identity of names is conclusive; but if the evidence raises an issue against the identity of person, then the burden rests on the person advancing the title to prove the identity, and that is appellants' condition in this case. They offer in evidence a certificate which establishes conclusively that the Frederick Lewis named therein was a single man. It is so found as a fact, and by awarding him only one-third of a league the board conclusively found that he could not claim as the owner of negroes (State v. Sullivan, 9 Tex. 156), nor as having servants (Hatch v. Dunn, 11 Tex. 708), nor as being the head of a family, consisting of himself and one single person (Hardiman v. Herbert, 11 Tex. 656; Hill v. Moore, 85 Tex. 345, 19 S. W. 162). His status is fixed definitely as that of a single man who could receive only one-third of a league of land. In order to make out their title to this land, appellants are forced to claim under the Frederick Lewis named in the certificate. As a link in their chain of title, they offered in evidence a deed from a Frederick Lewis to a league of land, which he describes as follows:

"Being my league of land to which I am entitled to as a citizen of this municipality."

[2] The grantor in this deed, if he correctly described the amount of land to which he was entitled, was not a single man; that is, a single man occupying the status that would give him only one-third of a league of land. He must have been a married man, or he must have occupied a status such as we find in the authorities last above cited. It appears, then, from the face of appellants' title, on facts revealed by this title, that the presumption of identity of person because of identity of name does not arise in appellants' favor. On the face of this title, the Frederick Lewis named in the certificate could not have been the Frederick Lewis named as grantor in the Samuel Rogers deed. Because of the suspicion thus cast on the title, appellants could recover only by offering evidence of identity sufficient to make out a prima facie case. Appellants advanced the following argument, explaining the prima facie case made by this title, to wit:

"In the first place, all of the evidence that appellees offered to show that the Frederick Lewis who made the deed to Samuel Rogers on November 1, 1835, was not the man to whom the certificate for the one-third league was issued, is that the deed from Frederick Lewis to Samuel Rogers conveyed 'my league of land to which I am entitled to as a citizen of this

municipality.' This deed did not purport to convey the league and labor referred to in the order of survey to Frederick Lewis; it did not purport to convey one-third of a league. A married man was entitled to more than a league; a single man to less than a league. But the proper words of description of the land conveyed by this deed are those that describe the land as that 'to which I am entitled to as a citizen of this municipality.' With the conveyance as written, such rights as Frederick Lewis had as a citizen of Texas passed to Samuel Rogers. This is true, whether his right was to one-third of a league or for more land. His right to the land at the date of this deed was not fixed. It depended, as events showed, on the provisions of the Constitution and laws of the Republic, not then in existence. His conveyance of his right covers whatever land he should thereafter acquire as a citizen, regardless of the amount, and he so intended."

We cannot follow appellants in their argument. In construing the Samuel Rogers deed, every element of the description must be given due effect, if possible. There is nothing on the face of this deed to limit this rule. Every word in the description can be given due force; for, if, Frederick Lewis was a married man, he was entitled to a league of land as a citizen of the municipality, and in addition thereto was also entitled to a labor. As we understand appellants' position, they would disregard all of the description, except that describing the land as being that "to which I am entitled to as a citizen of this municipality." Under this description they would claim, not only the league, but also the labor; for we see from their argument that they claim under this deed that "such rights as Frederick Lewis had as a citizen of Texas" passed to Samuel Rogers. Such cannot be the law. As we understand the record, appellants offered no evidence to overcome the suspicion cast on their title, and, had appellees rested the case on appellants' evidence, they would have been entitled to a finding on the issue of identity. But, over appellants' objection, appellees offered in evidence the following written testimony:

(a) The following certificate by the Commissioner of the General Land Office:

"September 6, 1919.

"I, J. T. Robinson, commissioner of the general land office of the state of Texas, do hereby certify that the papers, documents and records of said office show that among the archives of said office is a list signed by Chas. S. Taylor, indorsed: 'List of orders of survey made out as they were issued.' And in said list in its regular order appears the following: 'No. 41. Date, 8–28; name, Lewis Frederick; whereof, U. S., time of Emg., 1829; state, married: No. of family, 3.'

"In testimony whereof I hereunto set my hand and affix the impress of the seal of said office, this September 6, A. D. 1919.

"J. T. Robinson, Commissioner."

(b) Certified copy of the following order of survey:

"No. 41.    Nacogdoches, August 28th, 1835.

"Mr. ———. Sir: You are hereby authorized to survey within the limits described by me in your instructions the citio and labor of land which Mr. Frederick Lewis will designate to you, provided said tract is entirely vacant, strictly observing in every particular the instructions given you on that subject.

"Chas. S. Taylor, Com'r.

"3. File 62. Jefferson 1st Class. Chas. S. Taylor to Frederick Lewis. Order of Survey. Order of Survey."

[3] We believe both the "list of orders of survey made out as they were issued" and the certified copy of the order of survey were admissible as archives of the land office. Article 82, R. C. S. 1911, provides:

Subdivision 1: "All the records, book, titles, surveys, maps, papers and documents which may in any manner pertain to the lands of the late Republic, now state of Texas, which have been, prior to the eighteenth day of April, A. D. 1876, delivered to the commissioner of the general land office in pursuance of, and in accordance with, the requirements of any law of the Republic or state of Texas, by any of the empresarios, political chiefs, alcaldes, regidores, commissioners, special or general, for extending titles."

Subdivision 5: "All other books, transfers, powers of attorney, field notes, maps, plats, legal proceedings, official reports, original documents and other papers appertaining to the lands of the Republic or state of Texas that have been deposited or filed in the general land office in accordance with any law of the Republic or state of Texas."

Appellants may be right in their contention that the laws in force at the time Chas. S. Taylor made out the list of orders of survey did not affirmatively require him to make and keep any such list; but before issuing an order of survey the law required him to ascertain the name of the applicant, his former home, time of immigration, and his family status. His right to receive a grant of land was determined by the facts thus ascertained. Was Chas. S. Taylor, as commissioner, to carry all these facts in his memory? Would not the orderly discharge of his duties require him to make and keep "a list of orders of survey"? If he did keep such a list of orders of survey, it certainly pertained to lands of the state, and under the strictest construction of the provisions of article 82, is an archive. But appellants object that no testimony was offered as to the date when this list was filed in the land office; that the execution of the indorsement on the list was not shown; that its recitals are hearsay, etc.

[4, 5] We see no merit in these objections. This list purports to have been made and kept by Chas. S. Taylor, commissioner, and certainly he could not have discharged his official duties without such a list. As it was officially made, its execution and indorsement by Chas. S. Taylor is presumed. Also, being an ancient instrument, its due execution would be presumed, but could be rebutted by evidence to the contrary. Magee v. Paul (Tex. Sup.) 221 S. W. 256; Robertson v. Brothers (Tex. Civ. App.) 139 S. W. 658. After the office of Chas. S. Taylor was closed, and the land office opened, the commissioner of the general land office was the legal and proper custodian of the official papers of Chas. S. Taylor pertaining to the lands of Texas. This list has found its way into the land office. In view of its character and age, and the fact that it is now in this office, we will presume that it was duly filed within the time provided by law.

[6, 7] The facts recited in the list are not hearsay, because they were found by Chas. S. Taylor in his official capacity, and duly entered of record. Being an archive, of course, a certified copy was admissible. If admissible, it shows conclusively that there was in the municipality of Liberty a Frederick Lewis, who came to Texas from the United States in 1829; that he was a married man, with three in his family. Davis v. Bargas, 88 Tex. 662, 32 S. W. 874; Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S. W. 1149; Fleming v. Giboney, 81 Tex. 424, 17 S. W. 13. As that was the only issue that appellees were trying to sustain by the evidence offered, it follows, from what we have just said, that the admission of the certified copy of the order of survey could not have injuriously affected the interests of appellants. It was only a circumstance to support a fact which had been legally determined by the proper authorities.

But, apart from this, we believe this order of survey was an archive of the land office. It was found in the file pertaining to this land. On this issue, appellants make the following statement:

"This order of survey that the court admitted in evidence, the certificate issued by the board of land commissioners to Frederick Lewis, the field notes of the Frederick Lewis survey, and the deed from Frederick Lewis to Samuel Rogers, all are shown by the record in this case to bear the file marks 'File 62, Jefferson First Class.' This is the file in the General Land Office with reference to the land in controversy."

[8] As it was received by the commissioner, filed, and placed with the papers of this title, we believe it was admissible as a link in appellants' chain of title. If so, it connects appellants with the Frederick Lewis named in the deed, who was a married man, or occupied such a status as gave him the rights of a married man. There is no affirmative proof in the record showing how this order of survey came into the possession of the land commissioner, but the inference can be drawn, and in support of the

judgment of the trial court should be drawn, that the commissioner received it as evidence on which the issuance of the patent was based. The patent was not issued to Samuel Rogers, as assignee of Frederick Lewis, but directly to the heirs of Frederick Lewis. With this file before him, showing the facts as detailed in the statement made by appellants, as copied just above, the Commissioner doubtless concluded—but whatever his conclusion was is immaterial—that those holding under Samuel Rogers had not established a transfer from the Frederick Lewis, the single man. As evidence on which the title was issued, whether for or against the claim of appellants, if it was received and acted on by the commissioner, it became an archive of the land office. Magee v. Paul, supra.

As we understand appellants' brief, they practically concede that this instrument was admissible as a link in their chain of title, saying:

"But while this order of survey may have been admissible for this purpose only, that is, as a link in the chain of title from the government down to Frederick Lewis, *it was not admissible for the purpose of creating doubts as to his identity.*"

We do not follow appellants in this proposition. Whatever may have been the facts as to identity, it is clear that the board of land commissioners, on whom rested the duty of ascertaining the facts as to Frederick Lewis' right to one-third of a league of land, and whether or not it had been sold, refused to make a finding other than he "had sold his headright." No grantee was named by them. In support of the verdict of the jury, the inference must be drawn that the evidence as to the identity of the grantee was not sufficient. Hence appellants are in no way estopped by the finding of the board to show that Samuel Rogers was not the grantee of Frederick Lewis, the single man, and inferences to sustain this fact can be drawn from appellants' title, as well as from other facts and circumstances in the case. Being in evidence, this certificate should be construed by the facts recited therein, and their effect cannot be destroyed because appellants assert that it is a link in their chain of title. Because of its nature, the facts recited therein would not be conclusive on the jury, but are only circumstances to be considered by them on the issue of identity.

[9] And in this connection, we would say, further, that as an ancient instrument, and because of its age, apart from the fact that it was an archive, this order of survey was admissible as a circumstance on the issue of identity. Magee v. Paul, supra, and authorities therein cited. It appears from the record that appellees could not secure the original, as it constituted a part of the file pertaining to the title to this land. Then,

under Dikes v. Miller, 25 Tex. Supp. 290, 78 Am. Dec. 571, a certified copy was "the best evidence," and therefore admissible. Of course, if we are correct in our conclusion that the burden rested on appellants to sustain the issue of identity, and that they offered no evidence on that issue, the instruments above discussed become immaterial as evidence, and their admission could not constitute reversible error. They would only be circumstances in appellees' favor on an issue which, without such circumstances, was uncontroverted.

In connection with the certified copy of the above instruments, appellees also offered the depositions of the land commissioner as to their contents. This testimony was also objected to. If the certified copies were lawfully received, no error was shown in the admission of the commissioner's testimony. No facts were disclosed thereby which were not already before the jury. McNeil v. O'Connor, supra.

[10] We overrule all assignments attacking the verdict of the jury and the court's judgment thereon, because in our judgment the answers to the special issues were fully sustained by the evidence offered. Under authority of Houston Oil Co. v. Hayden, supra, and other authorities cited above in connection with this case, the finding of the board of land commissioners, as reflected in certificate No. 75, on which this land was patented, are conclusive, and cannot be impeached at this late day. So the duty rests on us to give all such findings their full legal effect. Under these authorities, appellants advance this proposition:

"The fact recited in the land certificate upon which patent issued, that Frederick Lewis had sold his headright, is conclusive that appellees subsequently acquired no title by deed from heirs of Frederick Lewis or by judgment against Frederick Lewis and his unknown heirs, and, having shown no other title, appellees were therefore naked trespassers."

But appellants are met with the counter proposition that the title to land in this state must rest in some one. Before title can pass from a present owner, there must be some one capable of receiving the title, and who in fact does receive it. 13 Cyc. 538. A finding that Frederick Lewis sold his headright is meaningless, and void, and of no effect, unless appellants are able to show a vendee under that sale. The record sustains the jury's finding that Rogers was not the vendee. If he was not, who was? There is no showing. Appellants would place Frederick Lewis' title in nubibus. A deed is void unless a vendee is disclosed. 23 Cyc. 666–669; Houston Oil Co. v. Hayden, supra; Wright v. Lancaster, 48 Tex. 252; Kuehn v. Kuehn (Tex. Civ. App.) 232 S. W. 918; Id. (Tex. Com. App.) 242 S. W. 719. On the facts of this record, as we understand the law, no

effect whatever can be given to the finding that Frederick Lewis had sold his headright.

[11] Appellants also advance the proposition that they were entitled to an instructed verdict under the theory of prior possession. The facts on this issue are fully set out in the former opinion, to which we hereby refer. But the rule of prior possession has no application to the case now before us. Appellees hold under a regular chain of title from and under the original grantee, and are in no sense trespassers. But, if this were not so, appellants fully exhibited their title, and, though they had the prior possession, it affirmatively appears that they have no title, which fact destroys the presumption arising in their favor because of their prior possession. McCarthy v. Houston Oil Co. (Tex. Civ. App.) 221 S. W. 307, and authorities therein cited.

Reverting to appellees' contentions, they claim also under the three and five year statutes of limitation. We discussed these propositions in the former appeal, and as the facts on these issues on this appeal are identical with the facts on the former appeal, we adhere to our former rulings.

[12] We approve appellants' twelfth proposition, which is as follows:

"Should the judgment of the lower court be affirmed, appellants are entitled to interest against their warrantors, Petty and Mrs. Sternenberg, from the date of the deed, May 24, 1901, instead of from January 1, 1914, the date of eviction."

The facts show that the warrantors sold this land on the 24th day of May, 1901, for a consideration of $1,706, which was paid to them. We find no fact in the record which would bar appellants' right to receive interest on this sum at 6 per cent. per annum from the date of sale. Therefore the judgment of the trial court is reformed, giving appellants judgment for the amount paid the warrantors, with interest at the rate of 6 per cent. per annum from the date of payment.

Finding no errors as between appellants and appellees, the judgment of the trial court as between them is in all respects affirmed.

Affirmed in part, and in part reformed and affirmed.

### On Rehearing.

On rehearing the warrantors advance the following propositions against our judgment, reforming the judgment entered against them on their warranty, and allowing interest from the 24th day of May, 1901, the date of their deed to appellants:

(1) "The court erred in rendering judgment against these defendants upon the warranty, because these defendants sold a large quantity of land in bulk without any provision that same was per acre, or that the same price should apply to all the acres, and if plaintiffs lose this land, thereby decreasing the acreage and not obtaining the amount called for in their deed, their remedy would not be upon the warranty as was held in the case of Nicholson v. Slaughter [Tex. Civ. App.] 217 S. W. 716, and in numerous other decisions of the courts of Texas, and, the land having been sold in bulk, this court was without authority under the law to reform the judgment, and render a judgment for the amount of the acreage lost at the average price per acre, when large amounts of timber land of different values and containing various amounts of stumpage had been sold for a lump sum, there being no proof that the particular land had been sold at the average price, or that it was an average of the total acreage, or that it was worth as much as the other lands, or that the sale had been on the acreage basis, or that this land had been sold at any particular amount."

The following statement made by appellants, which is not controverted by warrantors, disposes of this proposition:

"The evidence in this case showed that V. A. Petty and G. A. Sternenberg conveyed this land to John H. Kirby on May 24, 1901, which title passed into the appellants; that G. A. Sternenberg died in April, 1908, devising all of his property to his widow, Mrs. Emma B. Sternenberg, defendant warrantor, who received all his property, which was in value worth more than $10,000. It was agreed that John H. Kirby paid $1.25 per acre for the land so conveyed to him."

(2) "The court erred in reforming and rendering judgment upon the warranty from the date of the original purchase, because, in so finding and holding, this court holds contrary to and in effect overrules the case of Huff v. Reilly, 64 S. W. 387."

[13] As we understand the facts of this case, we are not in conflict with Huff v. Reilly, cited by warrantors. The facts show that warrantors' grantees were never in possession of the land in controversy in this suit. When the grantee has not been in possession of the demised premises, "the measure of damages in a suit upon general warranty of title to land is the purchase money, with interest at the legal rate from the date of payment." Fidelity Lumber Co. v. Ewing (Tex. Civ. App.) 201 S. W. 1175.

Appellants insist that we are in conflict with our holding in this case on the former appeal upon the issue of three years' limitation. On the former appeal of this case (230 S. W. 871) we held:

"The instructed verdict in favor of appellees cannot be sustained under the three-year statute. If Frederick Lewis or his heirs sold this land to Samuel Rogers, or those holding under him, it follows that appellees did not hold title or color of title to support limitation of three years."

On this appeal we have said, on the issue of three years' limitation:

"We adhere to our former rulings."

We were trying to say that appellees, under our holding, had a record title, and, consequently, did not need the benefit of the three-year statute of limitation; but, if we were wrong in this holding, and if appellees did not hold the record title, that then they could not recover on the three-year statute of limitation. So appellants are in error when they construe our opinion as holding "that appellees have neither title nor color of title."

Again, appellant says:

"As the facts on this appeal and the former appeal are the same, this court must overrule its former opinion, or on this appeal hold that the appellees are trespassers."

In all its details the facts on this appeal are not the same as on the former appeal. The former appeal was from an instructed verdict, and we were discussing the case from that standpoint. This appeal is from a jury verdict, thus presenting entirely different issues.

Appellant has very ably reviewed the many authorities in Texas on the issue of prior possession, to wit: House v. Reavis, 89 Tex. 626, 35 S. W. 1063; Watkins v. Smith, 91 Tex. 589, 45 S. W. 560; Teagarden v. Patten, 48 Tex. Civ. App. 571, 107 S. W. 909; Boyd v. Miller, 22 Tex. Civ. App. 165, 54 S. W. 411; Duren v. Strong, 53 Tex. 379; Caplen v. Drew, 54 Tex. 493; Parker v. Railway, 71 Tex. 132, 8 S. W. 541; Texas Co. v. Dunn, 81 Tex. 1, 16 S. W. 647, 26 Am. St. Rep. 776; Lockett v. Glenn (Tex. Sup.) 65 S. W. 482; Buie v. Penn (Tex. Civ. App.) 172 S. W. 547; Keys v. Mason, 44 Tex. 140; Linard v. Crossland, 10 Tex. 462, 60 Am. Dec. 213; Randell v. Robinson (Tex. Civ. App.) 146 S. W. 717; Christy v. Scott, 14 How. 282, 14 L. Ed. 422; Randell v. Robinson (Tex. Civ. App.) 211 S. W. 625; Mortimer v. Jackson (Tex. Com. App.) 206 S. W. 510; Frazer v. Seureau, 60 Tex. Civ. App. 416, 128 S. W. 649; Allen v. Vineyard (Tex. Civ. App.) 212 S. W. 266. We based our disposition of this cause on a ruling of this court in McCarthy v. Houston Oil Co. (Tex. Civ. App.) 221 S. W. 307, where we said:

"Plaintiff's possession, if any, was under a void deed. This negatived any presumption of title from a showing made by plaintiffs of prior possession."

As we understand the facts of that case on prior possession, appellants had a stronger case than is presented on this appeal. Since filing our opinion herein on the 16th ultimo, the Commission of Appeals, while reversing the disposition made by us of the McCarthy Case, quoted with approval the above proposition.

The motions for rehearing filed herein are in all things overruled.